IN THE MATTER OF: The Appeal of CHARLES E. WORLEY from the Decision of the Alamance County Board of Equalization and Review for 1986 Concerning the Exemption from Property Tax of Certain Property of Beacon Baptist Church

No. 8810PTC549

(Filed 21 March 1989)

**1. Taxation § 22.1— property held for future religious use— no exemption from taxation**

Because no public purpose is served by permitting land to lie unused and untaxed, *present* use, not *intended* use, controls; thus, property merely held for planned future religious purposes is not exempt. Art. V, § 2(3) of the N. C. Constitution; N.C.G.S. § 105-278.3(a) and (d).

**2. Taxation § 22.1— undeveloped property—use for recreation and spiritual retreat—present use sufficient for tax exemption**

Recreational church-related activities which occurred on church-owned property and use of the property as a spiritual retreat together constituted sufficient "present use wholly and exclusively for religious purposes" to warrant exemption from *ad valorem* taxation.

**3. Taxation § 22.1— use of lot as buffer zone for church—tax exempt use**

Use of a lot as a buffer zone to screen a church from industrial exposure was a tax exempt use, since use of the adjacent undeveloped land as a buffer zone was reasonably

IN RE APPEAL OF WORLEY

[93 N.C. App. 191 (1989)]

necessary for the convenient use of church buildings, and use of the lot as a buffer zone to protect the sanctity and serenity of the church from encroaching industrial development was a permissible "religious purpose" and "present use" entitling the property to exemption.

APPEAL by the County of Alamance and Beacon Baptist Church from the North Carolina Property Tax Commission. Final Decision entered 10 March 1988. Heard in the Court of Appeals 11 January 1989.

*County Attorney S. C. Kitchen for Alamance County, appellant.*

*Tuggle, Duggins, Meschan & Elrod, P.A., by Carolyn J. Woodruff, for Beacon Baptist Church, appellant.*

*Charles E. Worley, pro se appellee.*

BECTON, Judge.

Beacon Baptist Church and Alamance County appeal from a Property Tax Commission decision denying tax exemption for a 5.29-acre parcel of land owned by the church. (Appellants do not challenge that part of the decision granting an exemption for the church's remaining property.) Appellants contend that the parcel in dispute was tax exempt because it was "wholly and exclusively used for religious purposes," as required by statute. We agree, and reverse the challenged portion of the Commission decision.

I

In 1986, Beacon Baptist Church sought a "religious purposes" exemption from *ad valorem* taxation for all of the real property it owned. The exemption was granted by the Alamance County Board of Equalization and Review. Charles E. Worley, a citizen of Alamance County, appealed the decision to the North Carolina Property Tax Commission, contending that the property was not entitled to exemption because, in his view, the land was merely being held for expansion by the church and was not wholly and exclusively used for religious purposes.

The following evidence was presented at the Commission hearing.

Beacon has experienced tremendous growth since the church was founded, expanding from 29 people meeting in a rented hall

in 1973 to as many as 475 people attending services at the church complex in 1986. Over the years, Beacon acquired three adjacent lots as its need for expansion increased and as the land became available.

As of 1 January 1986, the assessment date, Beacon owned 19.18 contiguous acres of land, designated as Lots 33, 34, and 37 on the Alamance County tax map. Lot 34 (8.62 acres) was purchased in 1973, and Lot 33 (5.27 acres) was purchased in 1977. Improvements made to Lots 33 and 34 consisted of a sanctuary building, an education building, parking lots, playground areas, and storage facilities. The 5.29-acre parcel in dispute, Lot 37, was purchased in 1985. Although an architect had performed a space study plan regarding existing and proposed facilities for the Beacon property, no improvements had been made to Lot 37 by the assessment date. The lot remained in a natural, largely wooded state.

Beacon's property and the surrounding land had been zoned for industrial use. Beacon's leaders decided to purchase Lot 37 in 1985 after they learned that the property was on the market and that a potential buyer intended to build a textile plant there. The church was already bounded by a molded plastics plant and a textile plant, and construction of an industrial park to the rear of the church had been proposed. According to Beacon's minister, Lot 37 was acquired both to serve as a buffer zone between the church grounds and the burgeoning industrial area surrounding it, and to hold the land for projected future expansion of church facilities.

Although Lots 33 and 34 were used extensively for church-related activities, comparatively less activity took place on Lot 37. The following activities occurred there between the date of purchase and the date of assessment. First, Lot 37 was regularly used as a spiritual retreat by men from the Alamance Rescue Mission, a church-affiliated organization benefiting substance abusers and the homeless. Beacon members picked up the men at the Mission in downtown Burlington and transported them to the church to attend services. Before and after services, a number of the men walked through the wooded sections of Lot 37, enjoying the area's solitude, peacefulness and natural beauty. Second, Beacon's youth groups ("Awanas" and "Pro-Teens"), part of the church's active youth ministry, used Lot 37 for recreational activities: a snowball fight was held there, and the Pro-Teens group selected

campsites in wooded sections of the lot to be used to satisfy certain group requirements. Third, the property was made available for community recreation, including hunting. Lot 37 was never used for a commercial purpose.

After hearing the evidence, the Commission found that the use of Lot 37 by men from the Rescue Mission "contribute[d] to the success of the church's programs for these men. . . ." The Commission likewise concluded that "the organized activities of the Awan[a]s and Pro-Teens groups [were] activities that demonstrate[d] and further[ed] the beliefs and objectives of Beacon Baptist Church." The Commission made no findings regarding the use of the property as a buffer zone.

The Commission concluded that "Lot 37 . . . [was] purchased, not because the church needed the land immediately, but in order to prevent the purchase of the lot by an industrial user and to preserve the lot for *future* use by the church. . . ." (Emphasis supplied.) The Commission further concluded that the use made of Lot 37 was insufficient to support exemption. It denied the exemption, holding that "[t]he church did not *use* this lot wholly and exclusively for religious purposes. . . ." (Emphasis supplied.)

Appellants contend on appeal that the Commission decision was unsupported by the evidence and that the Commission erred as a matter of law in denying the church an exemption for Lot 37. Appellants assert that the activities occurring on the property, as well as the lot's function as a buffer, constituted sufficient "present use" for "religious purposes" to warrant exemption.

II

We first address principles governing review of this case.

A.  *Standard of Review*

Appellate review of Property Tax Commission decisions is governed by N.C. Gen. Stat. Sec. 105-345.2 (1985). That section permits us to grant relief if, based on our review of the whole record, it appears that the taxpayer's substantial rights have been prejudiced because the Commission's findings, inferences, conclusions, or decisions are, among other things, "[a]ffected by . . . errors of law" or are "[u]nsupported by competent, material and substantial evidence in view of the entire record as submitted." *Id.* We must consider all of the evidence in the record, including "evidence contradictory to the evidence on which the [Commission] decision relies," to determine whether the decision "has a rational

IN RE APPEAL OF WORLEY

[93 N.C. App. 191 (1989)]

basis in the evidence." *In re Southview Presbyterian Church*, 62 N.C. App. 45, 47, 302 S.E. 2d 298, 299 (1983), *disc. rev. denied*, 309 N.C. 820, 310 S.E. 2d 354 (1983).

B. *"Religious Purposes" Exemption*

Article V, Section 2 of the North Carolina Constitution authorizes the General Assembly to "exempt . . . property held for . . . religious purposes" from *ad valorem* taxation. N.C. Const., Art. V, Sec. 2(3) (1984). Under Section 105-278.3 of the General Statutes, property consisting of "[b]uildings, the land they actually occupy, and *additional adjacent land reasonably necessary for the convenient use of any building[s]*" is exempt from taxation if the property is *"[w]holly and exclusively used by its owners for religious purposes."* N.C. Gen. Stat. Sec. 105-278.3(a) (1985) (emphasis added). A religious purpose "pertains to the practicing, teaching, and setting forth of a religion. Although worship is the most common religious purpose, the term encompasses other *activities that demonstrate and further the beliefs and objectives* of a given church or religious body." N.C. Gen. Stat. Sec. 105-278.3(d)(1) (emphasis added).

The theory behind the "religious purposes" property tax exemption is that by relieving religious organizations of the burden of taxation, these groups can devote funds to other beneficial programs, thereby better serving the public interest. However, a competing consideration is that granting exemptions to some increases the tax burden borne by others. Accordingly, "[s]tatutes exempting specific property from taxation because of the purposes for which [the] property is held and used . . . should be construed strictly . . . against exemption and in favor of taxation." *Harrison v. Guilford County*, 218 N.C. 718, 721, 12 S.E. 2d 269, 272 (1940). This does not mean that the statute should be construed narrowly or stintingly. *Id.* at 722, 12 S.E. 2d at 272. It simply means that "everything [should] be excluded from [the statute's] operation which does not clearly come within the scope of the language used. . . ." *Id.* (citation omitted).

C. *"Present Use" of Property Controls*

[1] The rule in North Carolina is that unless property is "presently used" for tax exempt purposes, it is not tax exempt. *See Southview*, 62 N.C. App. at 50-51, 302 S.E. 2d at 300-01. Because no public purpose is served by permitting land to lie unused and untaxed, *present* use, not *intended* use, controls. *See id.* Thus,

property merely held for planned future religious purposes is not exempt. *Id.*

We now turn to the appellants' contentions.

III

[2]   We conclude that the Commission erred in holding that the activities taking place on Lot 37 did not constitute present use wholly and exclusively for religious purposes.

First, following the lead of *Southview,* we conclude that the recreational use of Lot 37 was present use for religious purposes. In *Southview,* as here, a church owned about 20 acres of land, only a portion of which contained improvements. The remaining vacant land, as here, was used for recreational activities, and had never been used for commercial purposes. *Cf. In re Forestry Foundation,* 296 N.C. 330, 250 S.E. 2d 236 (1979) (use of property primarily for commercial purposes precluded exemption). The *Southview* Court held that the property in dispute was exempt because the community recreational activities taking place there constituted a present use wholly and exclusively for religious purposes. 62 N.C. App. at 51, 302 S.E. 2d at 301. Although it is not clear from the record in this case what *community* recreational use of the property was made, beyond hunting, it is undisputed that the *church youth groups* used Lot 37 for recreational church-related activities.

Second, we conclude that natural areas reserved—and *used*— as a spiritual retreat should be exempt from *ad valorem* taxation on "religious purposes" grounds. *Accord Order Minor Conventuals v. Lee,* 64 A.D. 2d 227, 409 N.Y.S. 2d 667 (1978) (property preserved in its natural state "to allow communication with God in solitude" was exempt); *Christward Ministry v. San Diego County,* 271 Cal. App. 2d 805, 76 Cal. Rptr. 854 (1969) (keeping land in its wild state reasonably necessary for use as religious retreat).

Finally, Lot 37 was not removed from the operation of the exemption statute simply because it was also being held for future use. *Cf. Harrison,* 218 N.C. 718, 12 S.E. 2d 269 (property purchased and held for particular future use nonetheless exempt since it was presently devoted to some other religious purpose).

Although we decline to hold that permitting hunting on Lot 37 was an exempt "religious purpose," we conclude that the other recreational activities that occurred there and the use of the prop-

erty as a spiritual retreat together constituted sufficient "present use wholly and exclusively for religious purposes" to warrant exemption. The Commission erred as a matter of law by concluding otherwise.

## IV

[3] As an alternative basis for our holding, we conclude that the use of Lot 37 as a buffer zone to screen the church from industrial exposure was an exempt use.

First, in our view, use of the adjacent undeveloped land as a buffer zone was "reasonably necessary for the convenient use of [church] buildings." *See generally* N.C. Gen. Stat. Sec. 105-278.3(a); *Harrison*, 218 N.C. at 721, 12 S.E. 2d at 272; *Southview*, 62 N.C. App. at 51, 302 S.E. 2d at 301. Our view is supported by this court's decision in *In re Wake Forest University*, 51 N.C. App. 516, 277 S.E. 2d 91 (1981), *disc. rev. denied*, 303 N.C. 544, 281 S.E. 2d 391, *pet. for reh'g denied*, 304 N.C. 195, 285 S.E. 2d 98 (1981). In *Wake Forest*, this court implicitly recognized that land used as a buffer was "reasonably necessary for the convenient use" of the University's stadium. There, a 38-acre parking lot was shared by the University and a corporation that donated the land. The remaining 10 acres of the donated plot were covered with trees and gullies, and separated the University stadium from the parking lot and the adjoining corporation. After reciting the rule that "additional land reasonably necessary for the convenient use of . . . improvements shall be exempted from taxation," and noting that "it is the use to which the property is dedicated [that] controls," the court held that the entire portion of the donated land not used by the corporation—*including the 10-acre buffer zone*—was "wholly and exclusively used for [exempt] purposes." *Id.* at 520, 277 S.E. 2d at 94.

Second, we conclude that the use of Lot 37 as a buffer zone to protect the sanctity and serenity of the church from encroaching industrial development was a permissible "religious purpose" and "present use" entitling the property to exemption. *Accord Grady v. Hausman*, 509 So. 2d 1316 (Fla. Dist. Ct. App. 1987) (property adjoining church left in its natural state provided a tranquil, private setting contributing to the spirituality of the parish); *Order Minor Conventuals*, 409 N.Y.S. 2d at 669 (retaining wooded land as buffer from surrounding development was exempt religious purpose); *Christward Ministry*, 76 Cal. Rptr. at 856 (buffer reasonably

necessary to protect religious use of remaining property); *City of Houston v. Cohen*, 204 S.W. 2d 671 (Tex. Civ. App. 1947) (vacant lot adjacent to church served as a barrier to noise and confusion incident to downtown traffic); *People ex rel. Outer Court, Inc. v. Miller*, 161 Misc. 603, 292 N.Y.S. 674 (1936) (additional property acquired to protect boundaries from encroaching development was exempt). *Cf. In re Major Deegan Boulevard*, 131 N.Y.S. 2d 330 (1954) (preventing historical structure from becoming hemmed in by unsuitable buildings on nearby land was exempt purpose); *Board of Assessors v. Cunningham Foundation*, 305 Mass. 411, 26 N.E. 2d 335 (1940) (tract screening hospital and park from surrounding development was exempt). *But see Kerrville Indep. School Dist. v. Southwest Texas Encampment Ass'n*, 673 S.W. 2d 256 (Tex. Ct. App. 1984) (23 lots across street from exempt 63-acre religious campground used solely to further the atmosphere of rustic hill country were not used for religious purpose).

Although the uncontradicted evidence presented at the hearing demonstrated the church's need for a buffer zone to protect it from encroaching industrial development, the Commission failed to consider that evidence. Accordingly, we hold that the decision was unsupported by competent, material, and substantial evidence appearing in the record. However, we emphasize the narrowness of our holding. We do not attempt here to draw bright lines or to quantify the amount of acreage a church reasonably may purchase for the purpose of establishing a buffer zone. Each case turns upon its unique facts, and appellate courts will view with a careful eye any acquisition of extensive acreage under less compelling facts.

V

The Commission erred in holding that Beacon Baptist Church did not use Lot 37 wholly and exclusively for religious purposes. Accordingly, we reverse that portion of the Commission decision which denies Lot 37 exemption from *ad valorem* taxation.

Reversed.

Judges WELLS and JOHNSON concur.