EDWARD VALVES, INC., A Delaware corporation, Plaintiff-Appellant v. WAKE COUN- TY, and EMMETT CURL, in his capacity as Wake County Assessor, Defendants- Appellees

No. 9410SC290

(Filed 3 January 1995)

### 1. Taxation § 92 (NCI4th)— self-created intangible property—distinction between property sold and similar property not sold—county's methodology unconstitutional

The Wake County methodology for taxing self-created intangible property is unconstitutional under both the Federal and

State Constitutions and also violates N.C.G.S. § 105-284(a), since the county distinguishes between intangible self-created property that is sold and similar property that is not sold, thus giving different tax treatment to taxpayers owning identical classes of property.

**Am Jur 2d, State and Local Taxation §§ 150 et seq.**

2. **Taxation § 84 (NCI4th)— appeal of real property assessment—dispute about perfection of appeal—summary judgment improperly granted**

The trial court erred in granting defendants' summary judgment motion of plaintiff's appeal of its real property assessment, since there was a factual dispute as to whether plaintiff properly perfected its appeal by failing to return a power of attorney signed by the property owner authorizing the representative's appearance before the Board of Equalization and Review.

**Am Jur 2d, State and Local Taxation §§ 795 et seq.**

Appeal by plaintiff from order entered 1 December 1993 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 26 October 1994.

*Womble Carlyle Sandridge & Rice, a Professional Limited Liability Company, by Pressly M. Millen, for plaintiff-appellant.*

*Wake County Attorney's Office, by Deputy County Attorney Shelley T. Eason, for defendants-appellees.*

JOHNSON, Judge.

Edward Valves (plaintiff) has operated a manufacturing facility employing approximately 210 persons on South Saunders Street in Raleigh since 1964. The company manufactures specialty valves for the nuclear and fossil fuel power plant industry. On 10 March 1989 all of the assets of plaintiff were sold to BTR-Dunlop, Inc. (BTR). Because the sale to BTR was an asset sale, plaintiff was required under federal law to allocate the consideration paid for all of the purchased assets. The firm of American Appraisal Associates, Inc. (American Appraisal) appraised all of the assets of plaintiff including approximately 200,000 engineering drawings on hand at the Raleigh facility. These engineering drawings contain technical engineering information needed to create the particular valve to reflect a customer's specific and unique requirements and are essentially exclu-

sive and custom-made. Plaintiff has retained every set of engineering drawings created since 1908. The drawings occupy approximately 110 file cabinets.

Before plaintiff became a part of BTR, the cost of creation of the engineering drawings was treated as a current expense by the company and written off by the company as a current cost of doing business. However, American Appraisal appraised the drawings currently being used based upon their reproduction cost in terms of their value as used in the continuing operation of plaintiff. Plaintiff alleged that no effort was made to determine the market value of the drawings. Accordingly, American Appraisal determined the reproduction cost of the drawings to be $12,827,900.00. The drawings were then placed on the balance sheet and federal income tax records as business property in Wake County. Because the drawings had been expensed in the past, they had never before appeared on the company's balance sheet or federal income tax records.

The 1990 listing form shows that plaintiff listed and affirmed its taxable personal property at $40,015,802.00 with approximately $12,827,900.00 attributable to engineering drawings. Taxes were then assessed on the basis of the value on the listing form. Plaintiff's Wake County business property listing for ad valorem tax purposes changed substantially from the 1989 listing.

Plaintiff contends that it listed the engineering drawings and the value of the engineering drawings as stated on the form because the Assessor's Office informed its employee, Mr. Kindsvatter, that the company was required to use the new acquisition costs rather than previous historical costs and that the engineering drawings had to be listed if they were on the company books. This resulted in an increase of $390,082.00 in plaintiff's tax bill. Only $7,824.00 was attributable to net additions to fixed assets prior to 1 January 1990. Over $190,000.00 of the increase was due to the inclusion of the value of the engineering drawings. After receiving the increased tax bill, plaintiff attempted to file an amended listing, using the historical costs. The amendment was rejected by Wake County. Plaintiff paid the assessed taxes under protest, made a formal post-payment demand for refund, and then brought this action. Plaintiff also later removed the engineering drawings from North Carolina.

Under the methodology used by the Wake County Assessor's Office, a business' intangible personal property and self-created intellectual property is taxed only if it is capitalized on the books of the

business. Wake County then depreciates that cost on a straight line basis according to the life of the asset as determined by the taxpayer. If an asset is not reflected on the books of a business, it is not taxed by Wake County. Typically, a business capitalizes such property only when it sells its assets. The Wake County Assessor acknowledges that to be the general practice.

The Assessor's Office had adopted no written guidelines concerning the taxation of intangible and self-created intellectual property prior to 1993 and none were furnished to Wake County's auditors. The Assistant Assessor is not aware of any other county in North Carolina which seeks to tax intangible personal property, or seeks to have the taxpayer list such property, apart from Wake County.

The 1990 Wake County Business Property Listing form which defendants furnished to plaintiff and all other businesses did not contain a schedule for the listing of intangible personal property or any instructions concerning listing of such property. The Assistant Assessor admitted that "there is nothing [on the form] to indicate that [the taxpayer] should list intangibles or self-created intellectual property." In fact, the 1990 form contained five schedules, A through E, seeking listing only of (A) Machinery & Equipment, Furniture & Fixtures; (B) Vehicles; (C) Supplies & Materials; (D) Equipment Owned by Others in Possession of Taxpayer; and (E) Leasehold Improvements. That listing form neither mentioned the word "intangibles" nor any of the categories of property that fall within the definition of intangibles. During the 1990 tax year, Wake County relied on taxpayers to voluntarily report property which its listing form did not seek. Moreover, during the 1990 tax year, there was no concerted effort by the assessor to discover intangibles, i.e., no operating audit program of any kind.

The total assessed value of all other discovered intangible property in Wake County for the tax year 1990, other than the $12,827,900.00 attributable to plaintiff's engineering drawing, was $2,414,926.00. Thus, plaintiff's engineering drawings resulted in payments on an assessed value more than twenty-seven times greater than the total amount paid by all other businesses on intangible property in Wake County combined.

The Business Personal Property Appraisal Manual provided to Wake County by the Ad Valorem Section of the Property Tax Division of the North Carolina Department of Revenue (State Manual) deals with the situation "where a new owner will acquire an existing busi-

ness." It points out that such an acquisition can occur as either a stock sale or an asset sale but that "[i]n each case, our first goal in making our appraisal is to use the actual historical cost." The counties are explicitly warned against "using selling price as the determinant of value."

On the 1993 Business Property Listing form, Wake County for the first time called for the listing of intangible personal property by business taxpayers. The form now contains a Schedule C calling for listing of "Intangible Personal Property" by type, year of acquisition, cost, and life year.

In early 1990, plaintiff appealed its real property assessment to the Wake County Board of Equalization and Review. On 28 February 1990, its agent wrote a letter to the Wake County Board of Equalization and Review placing plaintiff's real property assessment under appeal. The County Assessor's Office responded that the property owners must designate in writing any third party to represent them in appeals to the Wake County Board of Equalization and Review and enclosed a power of attorney form, an appeal form, and a copy of the property record card. Wake County claimed to have no record of any response from plaintiff or plaintiff's agent. Plaintiff contends, however, that defendants received a facsimile copy of a power of attorney form signed by Peter M. Smith of Debenham Tewson International, another tax consulting firm, and an unsigned document dated 26 March 1990 stating that BTR had appointed Debenham Tewson International to "undertake property tax audits for their United States portfolio." Plaintiff was never given a hearing on the assessment of its real property by the Wake County Board of Equalization and Review with respect to the 1990 tax year because Wake County believed the appeal to be unperfected.

The North Carolina Rules of Civil Procedure provide that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." North Carolina General Statutes § 1A-1, Rule 56(c) (1990).

Motions for summary judgment are an appropriate method of testing the legal sufficiency of claims presented in a complaint, including complaints which assert constitutional claims. *See Britt v. N.C. State Board of Education*, 86 N.C. App. 282, 357 S.E.2d 432, *disc. review denied*, 320 N.C. 790, 361 S.E.2d 71 (1987); *Town of Beech*

*Mountain v. County of Watauga*, 91 N.C. App. 87, 370 S.E.2d 453 (1988), *aff'd*, 324 N.C. 409, 378 S.E.2d 780, *cert. denied*, 493 U.S. 954, 107 L.Ed.2d 351 (1989). Rule 56 eliminates formal trials where only questions of law are involved. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). Plaintiff contends that the trial court erred in granting summary judgment for defendants. Plaintiff also contends that Wake County's assessment of taxes on its engineering drawings violates state and federal constitutional equal protection and uniformity requirements. We agree.

North Carolina General Statutes Chapter 105, Subchapter II, the Machinery Act, sets forth the laws and procedures governing ad valorem property taxation in North Carolina. Our legislature has classified property for tax purposes and determined that no class of property may be taxed except by uniform rule. North Carolina General Statutes § 105-284(a) (Cum. Supp. 1994). The rule of uniformity regarding property taxation is coextensive with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Hajoca Corp. v. Clayton, Comr. of Revenue*, 277 N.C. 560, 178 S.E.2d 481 (1971).

All property in North Carolina, both real and personal, is subject to property tax unless it was excluded or exempted from taxation by statute or the Constitution. North Carolina General Statutes § 105-274 (1992). In addition, both tangible and intangible property is subject to property tax. North Carolina General Statutes §§ 105-276 and 105-317.1 (1992). All taxpayers are required to list taxable property for ad valorem taxes regardless of its classification. North Carolina General Statutes §§ 105-309 (Cum. Supp. 1994), 105-311 (Cum. Supp. 1992), and 105-285 (Cum. Supp. 1994). The uniform appraisal standard requires that property be listed for taxation at its "true value in money," meaning fair market value. North Carolina General Statutes § 105-283 (1992). The uniform assessment standard requires that "all property, real and personal, shall be assessed for taxation at its true value or use value as determined under G.S. 105-283 or G.S. 105-277.6, and taxes levied by all counties and municipalities shall be levied uniformly on assessments determined in accordance with this section." North Carolina General Statutes § 105-284(a).

If a taxpayer disagrees with a county's valuation of its property, the taxpayer must pursue and exhaust its administrative remedies before resorting to the courts. North Carolina General Statutes §§ 105-322, 105-290 (Cum. Supp. 1994). Questions concerning valua-

tion which are first presented directly to the courts are properly dismissed. *Johnston v. Gaston County*, 71 N.C. App. 707, 323 S.E.2d 381 (1984), *disc. review denied*, 313 N.C. 508, 329 S.E.2d 392 (1985). However, a taxpayer may seek judicial review of an assessment directly in superior court by paying taxes and subsequently bringing suit against the taxing unit for a refund of taxes paid if the tax was imposed through clerical error, an illegal tax, or a tax collected for an illegal purpose. North Carolina General Statutes § 105-381 (1992).

Plaintiff chose to challenge the assessor's methodology in superior court by paying the taxes, and then filing an action for a refund in court. Plaintiff alleges that the taxation of its engineering drawings was an illegal tax imposed through clerical error and that it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Section 1983 of Title 42 of the U.S. Code and the uniformity requirements of the North Carolina Constitution and North Carolina General Statutes § 105-284(a).

Art. V, § 2(2) of the North Carolina Constitution provides:

(2) *Classification.* Only the General Assembly shall have the power to classify property for taxation, which power shall be exercised only on a State-wide basis and shall not be delegated. No class of property shall be taxed except by uniform rule, and every classification shall be made by general law uniformly applicable in every county, city and town, and other unit of local government.

42 USC § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

North Carolina General Statutes § 105-284(a) provides:

(a) Except as otherwise provided in this section, all property, real and personal, shall be assessed for taxation at its true value or use value as determined under G.S. 105-283 or G.S. 105-277.6, and taxes levied by all counties and municipalities shall be levied uniformly on assessments determined in accordance with this section.

EDWARD VALVES, INC. v. WAKE COUNTY

[117 N.C. App. 484 (1995)]

Plaintiff alleges as clerical error that it mistakenly listed the engineering drawings because a clerk in the Wake County Assessor's Office told plaintiff that the engineering drawings should be listed. Plaintiff's only reference to this contention is in a footnote in its brief. Since plaintiff failed to cite authority or discuss this issue in its brief, that claim is deemed abandoned and will not be addressed. N.C.R. App. P. 28(b)(5).

[1] Plaintiff does not challenge the constitutionality or validity of a tax statute which imposes taxes on personal property, nor the valuation of the engineering drawings. Rather, plaintiff contends that the methodology which Wake County used in 1990 to tax plaintiff's engineering drawings is "illegal" and unconstitutional. Plaintiff bases that contention upon the fact that Wake County's methodology has the effect of singling out that intangible property for taxation that is in the hands of those businesses which have been the subject of asset sales. Plaintiff argues that Wake County, by following this methodology, gives different tax treatment to taxpayers owning identical classes of property. In fact, defendants admit that identical intangible self-created property which has not been the subject of an asset sale (and therefore not capitalized) has not been taxed at all.

Conversely, defendants argue that plaintiff voluntarily listed the engineering drawings and therefore plaintiff cannot complain that the property has been taxed. We do not agree. As plaintiff points out, an employee of Wake County instructed plaintiff's financial officer that plaintiff must list the engineering drawings and that the drawings must be listed at the value at which they appeared on plaintiff's balance sheet, to-wit, the acquisition cost. Moreover, despite the fact that Wake County routinely allows amendments to intangible property listings for "mistakes," it declined to allow the plaintiff's timely attempt to amend its listing.

Defendants also argue that it should not be penalized merely because Wake County "does not have a foolproof way to ensure that every taxpayer in Wake County properly lists business assets of this kind." Defendants misapprehend the objection to their methodology. The point of contention is not just that a few taxpayers failed to list their intangibles despite the insistence of Wake County that they do so. It is rather that the very enforcement procedures by which Wake County has operated, indeed, the very message which Wake County has impliedly sent to its taxpayers, does not require the listing of self-created intangibles of the nature of engineering drawings, unless the

businesses have been sold. In fact, even after Wake County amended its tax listing form in 1993, it continued to distinguish in its enforcement practices between intangible self-created property that is sold and similar property that is not sold.

This is not a situation in which occasional inequities resulting from the application of the statute should not defeat the law unless they result from hostile discrimination of the kind described in *Leonard v. Maxwell, Comr. of Revenue*, 216 N.C. 89, 35 S.E.2d 316, *appeal dismissed*, 308 U.S. 516, 84 L.Ed.439 (1939). This was a purposeful, though somewhat informal, classification based upon an improper distinction between taxpayers who owned the same class of property, self-created intangibles that have been sold and similar intangibles that have not been sold.

While this is perhaps a case of first impression under North Carolina law, its governing principle is not new to federal jurisprudence. A holding of the United States Supreme Court is virtually dispositive here. In *Allegheny Pittsburgh Coal Co. v. Webster County Commission*, 488 U.S. 336, 102 L.Ed.2d 688 (1989), a group of coal companies challenged, under the Equal Protection Clause of the Fourteenth Amendment, a West Virginia county's assessments which were made at an assessment equal to 50% of the price paid for the property at a recent sale. The companies claimed that the methodology was unfair because comparable property that had not been recently sold was assessed at eight to thirty-five times less than the companies' property and the disparities were persistent. The Supreme Court held that the county's assessment methodology violated the Equal Protection Clause, which protects a taxpayer "from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." *Id.*, 488 U.S. at 345, 102 L.Ed.2d at 698 (*quoting Hillsborough v. Cromwell*, 326 U.S. 620, 623, 90 L.Ed. 358, 363 (1946)).

Defendants argue that a recent United States Supreme Court case upholding California's Proposition 13, *Nordlinger v. Hahn*, —— U.S. ——, 120 L.Ed.2d 1 (1992), may have overruled *Allegheny* by giving approval to California's adoption of an "acquisition cost" system for ad valorem property taxation. We do not agree. In fact, the majority in *Nordlinger* distinguished *Allegheny* as having properly struck down the West Virginia county's "assessment scheme" in light of the statutory and constitutional requirements of West Virginia that all property be taxed at its market value. North Carolina has the same

requirements as those of West Virginia. Our system is also based upon market value. North Carolina General Statutes 105-283. As was the case in *Allegheny*, the Wake County tax is discriminatory and "illegal" under North Carolina law.

Federal courts dealing with corporate claims under Section 1983 of Title 42 of the United States Code have held that a corporation can sue in its own right under that statute. *See e.g., Safeguard Mutual Insurance Co. v. Miller*, 472 F.2d 732 (3rd Cir. 1973). Conduct which infringes upon Fourteenth Amendment rights is actionable under Section 1983, when, as is the case here, it is done under color of law. *See Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 432 (2nd Cir. 1989) (recognizing that taxpayers may "attack the constitutionality of the assessment methodology [in] a § 1983 action in state court.").

We hold that the Wake County methodology for taxing self-created intangible property is unconstitutional under both the Federal and State Constitutions and also violates North Carolina General Statutes § 105-284(a) and 42 USC § 1983.

**[2]**  Plaintiff finally argues that the trial court erred in granting defendants' summary judgment motion of plaintiff's appeal of their real property assessment. Plaintiff argues that the assessed value of its land and improvements exceeded its real value by $1,166,760.00. Defendants argue that plaintiff did not properly perfect its appeal by failing to return a power of attorney signed by the property owner authorizing the representative's appearance before the Board of Equalization and Review.

North Carolina General Statutes § 105-322(g)(2)(a) requires that a request for a hearing must be in writing or by personal appearance before the Board prior to adjournment. In the instant case, plaintiff authorized Marvin I. Poer & Company and Peter M. Smith, president of Debenham Tewson International, to act on behalf of plaintiff in matters related to the appeal of the real estate assessment. Mr. Smith, a duly authorized agent of BTR-plaintiff, on behalf of BTR, gave power of attorney to David Leach to make an appearance before the Board of Equalization and Review.

Nevertheless, there is a factual dispute between the parties. Defendants allege that Wake County did not receive the power of attorney form and that even if the form was returned the form was inadequate to authorize Poer's appearance before the Board of Equal-

ization and Review. Plaintiff alleges that the power of attorney form was returned and duly authorized by an agent of BTR-plaintiff. While we do not read North Carolina General Statutes § 105-322(g)(2) as requiring the filing of a power of attorney, this dispute raises genuine issues of material fact for which summary judgment was inappropriate. Thus, the trial court's order granting summary judgment on plaintiff's real property claim in favor of defendant was in error.

For the reasons stated above the trial court's summary judgment order dismissing the action is reversed and the action is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

Judges LEWIS and THOMPSON concur.