IN THE MATTER OF: The Appeal of Southeastern Baptist Theological Seminary, Inc. from the Denials of Exemption of the 1996 Wake County Board of Equalization and Review

No. COA98-1440

(Filed 19 October 1999)

### 1. Taxation— property—exemptions—educational use

The Property Tax Commission did not err by concluding that certain parcels of land held by a seminary were exempt where competent, material and substantial evidence was presented to establish that the seminary sought to provide and maintain a relaxed campus atmosphere conducive to study, that the parcels in question were part of the original campus purchased by the seminary, that the seminary is the only Southern Baptist educational institution that maintains a rural campus, that this unique setting is a recruiting tool important to the seminary in competing for potential students, that students use the parcels for various activities consistent with the educational philosophy of the seminary, that the seminary intended to buffer its campus from

encroaching urbanization, and that each parcel is situated in such a way as to contribute to the intended buffering effect. N.C.G.S. § 105-278.4.

**2. Taxation— qualification of tax exempt property—equal protection—uniformity**

The statute governing determination of tax-exempt property is constitutional under both the United States and North Carolina constitutions. N.C.G.S. § 105-278.4 enumerates within the body of the statute the requirements necessary to qualify for an exemption and no additional guidelines need be implemented to qualify property as exempt.

Appeal by Wake County and cross-appeal by Taxpayer from the final decision entered 5 May 1998 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 26 August 1999.

*Wake County Attorney's Office, by Shelley T. Eason, Deputy County Attorney, for Wake County-appellant/appellee.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by Lacy H. Reaves and Amy L. Pritchard, for taxpayer-appellee/appellant.*

EDMUNDS, Judge.

Southeastern Baptist Theological Seminary (the Seminary), an affiliate of the Southern Baptist Church, is a religious educational institution located in Wake Forest, North Carolina. The Seminary owns approximately 600 acres of land on the site formerly occupied by Wake Forest College. The 600 acres contains the central campus, a golf course, student housing, and several parcels of undeveloped land.

The North Carolina Constitution authorizes the General Assembly to exempt from taxation "property held for educational, scientific, literary, cultural, charitable, or religious purposes." N.C. Const. art. V, § 2(3). In 1995, the Wake County Revenue Director, reviewing all previously exempt educational property in Wake County, determined that four parcels belonging to the Seminary did not fall under the exemption statute, N.C. Gen. Stat. § 105-278.4 (1997), and therefore were subject to taxation. The Seminary appealed the denial of its exemption applications for these four parcels to the Wake County Board of Equalization and Review, which upheld denial. The Seminary then appealed to the North Carolina

Property Tax Commission (the Commission), which reversed the County's denial as to three of the four parcels. The County appeals this decision; the Seminary cross-appeals, challenging the constitutionality of the application of the exemption statute.

## I. Wake County's Appeal

[1] We note as a preliminary matter that when a matter comes before the Commission, it is the taxpayer's burden to prove that the property is entitled to an exemption. *See In re Appeal of Atlantic Coast Conference*, 112 N.C. App. 1, 4, 434 S.E.2d 865, 867 (1993), *aff'd per curiam*, 336 N.C. 69, 441 S.E.2d 550 (1994). "This burden is substantial and often difficult to meet because all property is subject to taxation unless exempted by a statute of statewide origin." *Id.* (citing N.C. Gen. Stat. § 105-274).

The County contends that the Seminary failed to meet that burden, arguing that "there was insufficient evidence adduced at hearing to support exemption of the subject property under N.C. Gen. Stat. § 105-278.4[] as a matter of law . . . ." We disagree.

The exemption statute at issue, section 105-278.4, reads in pertinent part:

(a) Buildings, the land they actually occupy, and *additional land reasonably necessary for the convenient use of any such building* shall be exempted from taxation if:

(1) Owned by an educational institution (including a university, college, school, seminary, academy, industrial school, public library, museum, and similar institution);

(2) The owner is not organized or operated for profit and no officer, shareholder, member, or employee of the owner or any other person is entitled to receive pecuniary profit from the owner's operations except reasonable compensation for services;

(3) Of a kind commonly employed in the performance of those activities *naturally and properly incident* to the operation of an educational institution such as the owner; and

(4) *Wholly and exclusively used for educational purposes* by the owner . . . .

(b) Land (exclusive of improvements); and improvements other than buildings, the land actually occupied by such improvements, and additional land reasonably necessary for the convenient use of any such improvement shall be exempted from taxation if:

> (1) Owned by an educational institution that owns real property entitled to exemption under the provisions of subsection (a), above;
>
> (2) Of a kind commonly employed in the performance of those activities *naturally and properly incident* to the operation of an educational institution such as the owner; and
>
> (3) *Wholly and exclusively used for educational purposes* by the owner . . . .

(Emphasis added.) Subsection (f) of that section defines an "educational purpose" as

> *one that has as its objective the education or instruction* of human beings; it comprehends the transmission of information and the training or development of the knowledge or skills of individual persons. The operation of a golf course, a tennis court, a sports arena, a similar sport property, or a similar recreational sport property for the use of students or faculty is also an educational purpose, regardless of the extent to which the property is also available to and patronized by the general public.

N.C. Gen. Stat. § 105-278.4(f) (emphasis added). This statute permits consideration of the nature of the particular educational institution in determining whether an educational exemption may be applied. Unimproved land may be educationally exempted if it is for the convenient use of improved land and "[o]f a kind commonly employed in the performance of those activities naturally and properly incident to the operation of an educational institution *such as the owner*[.]" N.C. Gen. Stat. § 105-278.4(b)(2) (emphasis added). Therefore, the Commission was allowed to consider that the educational uses to which the questioned property was put were uses made by a Seminary.

The County argues that the requirements of section 105-278.4 were not met in that the parcels at issue were not incidental to the operation of the Seminary, nor were they wholly and exclusively used

for educational purposes. *See Atlantic Coast Conference*, 112 N.C. App. 1, 434 S.E.2d 865. The standard of review for a final order of the Commission is governed by N.C. Gen. Stat. § 105-345.2 (1997), which reads in pertinent part:

(b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error.

We therefore consider the "whole record" generated by the Commission. *See In re Appeal of Parsons*, 123 N.C. App. 32, 38, 472 S.E.2d 182, 187 (1996) (citing *In re McElwee*, 304 N.C. 68, 283 S.E.2d 115 (1981)). Because we are reviewing the Commission's finding that the property was "naturally and properly incident to the operation" of the Seminary and "wholly and exclusively used for educational purposes by the owner," N.C. Gen. Stat. § 105-278.4(b), we must specifically determine whether those findings were supported by "competent, material and substantial evidence" in the record, N.C. Gen. Stat. § 104-345.2(b)(5). At the Commission hearing, evidence was presented concerning the present condition, use, and status of the parcels now at issue on appeal:

IN RE APPEAL OF SOUTHEASTERN BAPT. THEOL. SEMINARY, INC.

[135 N.C. App. 247 (1999)]

A. Parcel 2, consisting of 12.72 acres, was undeveloped. It bordered Richland Creek on one side and North Richland Avenue, a road leading to residential areas near the campus, on the other. Lying between the Seminary campus and a residential development, Parcel 2 contained a large gully and a Carolina Power and Light Company easement. At the time of the hearing, Parcel 2 did not adjoin or abut other Seminary property. The Seminary offered testimony that Parcel 2 was used by Seminary students and their families for recreational activities and that the tract served as a buffer from faculty housing.

B. Parcel 3, consisting of 165 acres, bordered Capital Boulevard, the main highway in the area, and projected eastward toward the Seminary campus. There was a cemetery on the parcel, and five acres were used as a biodegradable landfill. The parcel was adjacent to the golf course and an area of student housing, but did not abut any other seminary property.

Garnet Paul Fletcher, vice-president for administration for the Seminary, testified that this sylvan area was "essential" to the atmosphere of the campus because it helped establish the character of the school, allowing the Seminary to "offer an ambience or a setting that is not duplicated anywhere else in North Carolina . . . ." The importance of this property to the campus atmosphere was confirmed by students and family members, who also testified to their recreational use of the parcel. Children of students roamed the property, and families gardened there. It was used for hiking and family outings. Students hunted on the property. It buffered the campus from busy Capital Boulevard and nearby housing developments. On the other hand, the students and family members also testified that they had never attended any organized religious or educational activities on the parcel, nor were there any established hiking paths or picnic areas or any other improvements on the parcel.

Many trees on parcel 3 were damaged by Hurricane Fran. As a result, portions of the parcel were clear cut, and the income derived from the sale of timber was used to repair other damage caused by the hurricane. In 1995, the Seminary contracted to sell fifty-six acres of this tract for commercial development, contingent upon the rezoning of the property. The Seminary sought to have the relevant portion of the tract rezoned for a highway business district, but when all its applications were denied, the sale did not proceed. Vice-president Fletcher testified that had the sale taken place, the Seminary

would have used the proceeds to purchase land closer to campus for building additional student housing.

C. Parcel 4 also fronted Capital Boulevard and was split by old Stadium Drive, which at one time had been the main entrance to the campus. While that old entrance road still existed and carried some traffic, the commonly-used entrance at the time of the hearing ran along the side of Parcel 4. The parcel buffered the Seminary campus from commercial development along Capital Boulevard. With the exception of an exempt cemetery, this parcel did not adjoin or abut other Seminary property. The Seminary had sold timber growing on this parcel, but only in order to thin the forest and maintain its natural state, as recommended by the company managing the forest.

D. Maps showing the relationships of these parcels to each other, to the Seminary campus, and to other area features such as highways and housing developments were also introduced.

E. Curtis West, a real-estate appraiser, testified on behalf of the Seminary as to his findings pertaining to the ratio of building space to exempted land for several area educational institutions. He compared the ratio for the Seminary with the average ratio found at the other institutions and concluded that the ratio for the Seminary would be consistent with the average ratio for other schools if the property in dispute were exempted; otherwise, the Seminary's ratio of buildings to exempted land would be low (i.e., the Seminary would have more buildings per unit of exempt land than the average for this area).

F. The County presented Emmett Douglas Curl, revenue director for Wake County, who reviewed the exemption applications and examined the parcels in question. He testified as to the procedures used in Wake County for determining whether a given parcel is exempt from taxation:

[T]o meet the test for exemption as taught in the Institute of Government and the ad valorem tax committee, you must meet two tests. One is ownership and once you meet the ownership test, then you must meet the use test.

And the use test, you go back to the general statutes to find what they say and how they must be used based on the statute that the property is making application under.

With regard to Parcel 3, he observed no evidence of use "nor did we get any information from the individuals in our conversation that the property was in use in any manner." Additionally, "it wasn't close enough to the campus to be used as a buffer and . . . there were other buffering properties that would provide for any reasonable buffer for the central campus and its buildings . . . ." As to Parcels 2 and 4, he also saw no evidence of use or improvements. Curl disputed the Seminary's need for these parcels as buffer property, noting that there are 600 feet of woods between the student housing complex and Parcel 3, and that a golf course and power line easement lie between the campus and Parcel 3. Wake Forest High School lies between the campus and Parcel 2. Parcel 4 is over one-half mile away from the closest building owned by the Seminary.

In conducting the whole record test statutorily required of a reviewing court, we "must decide all relevant questions of law *de novo*, and review the findings, conclusions and decision to determine if they are affected by error or are unsupported ' "by competent, material and substantial evidence in view of the entire record." ' " *Parsons*, 123 N.C. App. at 38-39, 472 S.E.2d at 187 (quoting *In re Appeal of Perry-Griffin Foundation*, 108 N.C. App. 383, 393, 424 S.E.2d 212, 218 (1993) (quoting N.C. Gen. Stat. § 105-345.2)). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Thompson v. Board of Education*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977) (quoting *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977)), *quoted in Rainbow Springs Partnership v. County of Macon*, 79 N.C. App. 335, 341, 339 S.E.2d 681, 685 (1986). A whole record review, while less deferential than an abuse of discretion review, is nevertheless not "a tool of judicial intrusion." *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979), *quoted in Rainbow Springs*, 79 N.C. App. at 341, 339 S.E.2d at 685. Instead, it "gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Id.* If the whole record supports the Commission's findings, we may not substitute our own judgment for that of the Commission, even in the presence of conflicting views of the evidence. *See In re Moses H. Cone Memorial Hospital*, 113 N.C. App. 562, 570, 439 S.E.2d 778, 782 (1994), *aff'd in part*, 340 N.C. 93, 455 S.E.2d 431 (1995).

Few North Carolina appellate opinions deal with the educational exemption, and those few, decided on facts substantially different from the case at bar, provide little guidance. *See In re Wake Forest*

*University*, 51 N.C. App. 516, 277 S.E.2d 91 (1981) (parking lot shared by Wake Forest University and R.J. Reynolds held sixty-four percent exempt, reflecting the extent it was used exclusively by the University); *Atlantic Coast Conference*, 112 N.C. App. 1, 434 S.E.2d 865 (property held by the ACC for its administrative offices was held exempt so long as salaries to commissioners and assistants, along with other administrative expenses, were reasonable for a non-profit institution).

However, we do find some guidance in analogous cases. One of the County's arguments in support of its contention that the property should not receive an educational exemption is that the land is undeveloped. In *In re Southview Presbyterian Church*, 62 N.C. App. 45, 302 S.E.2d 298 (1983), this Court held that a 15.56-acre tract held by the church met the requirements of a religious exemption, even though the tract was undeveloped, because it was used "for neighborhood recreation activities and for Boy Scout and Girl Scout activities such as camp-outs and athletics." We were "persuaded that such activities qualify as activities that demonstrate and further the beliefs and objectives of Southview Presbyterian Church and that the 15.56 acre tract is reasonably necessary for the convenient use of petitioner's church buildings." *Id.* at 51, 302 S.E.2d at 301 (internal citation omitted). Similarly, in *In re Appeal of Worley*, 93 N.C. App. 191, 377 S.E.2d 270 (1989), this Court upheld a religious exemption for a 5.29-acre parcel, which was unimproved and remained a natural area. The parcel at issue was used by church youth groups for recreational church-related activities, as well as by church members for hunting deer. This Court stated:

> Although we decline to hold that permitting hunting . . . was an exempt "religious purpose," we conclude that the other recreational activities that occurred there and the use of the property as a spiritual retreat together constituted sufficient "present use wholly and exclusively for religious purposes" to warrant exemption.

*Id.* at 196-97, 377 S.E.2d at 273-74. We are aware that *Southview Baptist Church* and *Worley* address religious exemptions as opposed to the educational exemption with which we are now dealing. Nevertheless, in light of the wording of the statute, which speaks of both improved land and land necessary for convenient use of improved land, we see no reason to exclude land from consideration for an educational exemption merely because it is undeveloped, so

long as sufficient competent, material, and substantial evidence is presented to support the exemption.

The County, pointing to the Seminary's attempts to rezone portions of Parcel 3 for sale for commercial development, argues that the Seminary was holding the parcel for future sale for profit and that the current possession was not "wholly and exclusively" for educational purposes. We disagree. North Carolina courts have held that future planned use of exempted property does not override the present use. Again, in the absence of North Carolina cases involving future use of property subject to an educational exemption, we review cases involving a religious exemption, while continuing to bear in mind that these exemptions are not necessarily equivalent. In *Harrison v. Guilford County*, 218 N.C. 718, 12 S.E.2d 269 (1940), our Supreme Court affirmed a religious exemption for a parcel owned and used by a church for outdoor meetings and upon which the church was planning to erect a new church building. In *Worley*, discussed *supra*, this Court cited *Harrison* to support our holding that a lot, currently used for church-related retreats and held for future church-related use, but that had been purchased by the church for the immediate purpose of blocking another buyer, was entitled to a religious exemption. Although we observe that both *Harrison* and *Worley* involve exempt property where the future use would also be for an exempt purpose, whereas here the County is contending that the Seminary was holding the land for a future non-exempt purpose, we do not find this distinction controlling. To be eligible for an educational exemption, there is no requirement that the party seeking the exemption have a positive intent to hold or use that property for some exempt purpose *ad infinitum*. "*[P]resent* use, not *intended* use, controls." *Worley*, 93 N.C. App. at 195, 377 S.E.2d at 273 (citing *Southview Presbyterian*, 62 N.C. App. at 50-51, 302 S.E.2d at 300-01).

Additionally, the County argues that the Seminary's sale of timber from the land was inconsistent with the educational use of the property. We disagree. The Seminary's stewardship to the land in maintaining a healthy forested state, in removing trees damaged by a hurricane, and in using proceeds from the sale of the removed timber to pay for other repairs caused by that hurricane, does not affect the designation of the land as educational property.

Competent, material, and substantial evidence was presented to establish that the Seminary sought to provide and maintain a relaxed campus atmosphere conducive to study, that the parcels in question

were part of the original Wake Forest Campus purchased by the Seminary, that the Seminary is the only Southern Baptist educational institution that maintains a rural campus, that this unique setting is a recruiting tool important to the Seminary in competing among potential students considering a seminary education, and that students use all the disputed parcels for various activities consistent with the educational philosophy of the Seminary. There was further evidence that Capital Boulevard is a major highway, that the Seminary intended to buffer its campus from encroaching urbanization, and that each parcel is situated in such a way as to contribute to the intended buffering effect. We have held that buffering is an appropriate consideration in determining whether an educational exemption applies to a particular parcel. *See Worley*, 93 N.C. App. 191, 377 S.E.2d 270.

We note also that the Commission stated in its Final Decision that "[e]ven though the land to building ratio analysis is an acceptable appraisal approach, the Commission did not consider said approach in this decision." We similarly do not consider evidence of the Seminary's land to building ratio. Nevertheless, the record in this case contains sufficient evidence to "give[] a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Rogers*, 297 N.C. at 65, 253 S.E.2d at 922. After review of the whole record, we affirm the decision of the Commission.

## II. Seminary's Cross-Appeal

[2] On cross-appeal, the Seminary contends that subjecting the three parcels to taxation violates the United States and North Carolina constitutions, arguing that "the rule of uniformity was violated because the exemption statute was applied unequally to the Seminary . . . ." This allegedly unequal treatment was a result of the state's failure "to promulgate any written exemption guidelines or take any other measures to promote the equal application of the educational exemption."

The North Carolina Constitution provides that "[n]o class of property shall be taxed except by uniform rule, and every classification shall be made by general law *uniformly applicable* in every county, city and town, and other unit of local government." N.C. Const. art. V, § 2(2) (emphasis added). Additionally, "[e]very exemption shall be on a State-wide basis and shall be made by general law *uniformly applicable* in every county, city and town, and other unit of local government." N.C. Const. art. V, § 2(3) (emphasis added).

However, "occasional inequities resulting from the application of the statute should not defeat the law unless they result from hostile discrimination." *Edward Valves, Inc. v. Wake County*, 117 N.C. App. 484, 492, 451 S.E.2d 641, 647 (citation omitted), *review granted*, 340 N.C. 111, 456 S.E.2d 327 (1995), *aff'd as modified and remanded*, 343 N.C. 426, 471 S.E.2d 342 (1996). Similarly, the United States Supreme Court has stated that a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution occurs where a lack of uniformity of taxation results from more than "mere errors of judgment by officials" and "amounts to an intentional violation of the essential principle of practical uniformity." *Sunday Lake Iron Co. v. Wakefield Township*, 247 U.S. 350, 353, 62 L. Ed. 1154, 1156 (1918). Accordingly, the Seminary must establish intentional discrimination against property subject to taxation in order to prevail.

The Seminary relies primarily on this Court's decision in *Edward Valves*, 117 N.C. App. 484, 451 S.E.2d 641. In that case, Edward Valves, a Wake County corporation that made valves for power plants, sold its assets to another business. Engineering drawings maintained since 1908 were listed as assets at the sale, even though up to that time the drawings had been treated as expenses and thus not listed. Wake County assessed a tax based upon the value of these drawings. We noted that the .challenged scheme taxed intangible property only when it was capitalized on the books of the business. Because capitalization of such property did not occur until a business sold its assets, we held that the scheme resulted in discrimination "based upon an improper distinction between taxpayers who owned the same class of property, self-created intangibles that have been sold and similar intangibles that have not been sold." *Id.* at 492, 451 at 647. Wake County, the only county in the state to implement taxation on this type of property, had no written guidelines to effectuate the even application of the tax. Because the methodology employed by Wake County "singl[ed] out that intangible property for taxation that is in the hands of those businesses which have been the subject of asset sales," it gave "different tax treatment to taxpayers owning identical classes of property." *Id.* at 491, 451 S.E.2d at 646. The tax was thus held discriminatory and illegal.

In contrast to the facts in *Edward Valves*, section 105-278.4 exempts like property from taxation so long as the taxpayer meets the burden of establishing the four requirements set out in that statute. A statute does not have to exclude all inequalities to meet

constitutional requirements, and in fact the statute now at issue specifically grants some leeway by excluding property that is "reasonably necessary" for use of educational buildings and improvements. Nevertheless, the four requirements of the statute are reasonably objective and do not result in any hostile or systematic discrimination.

The Seminary further contends that the lack of written guidelines violates the rule of uniformity, citing *McElwee*, 304 N.C. 68, 283 S.E.2d 115. However, that case does not stand for the principle that written guidelines are invariably necessary. In *McElwee*, which involved a challenge to a county's reappraisal of all real property within its borders, the applicable statute required the county to "develop[] and compile[] uniform schedules of values, standards, and rules to be used in appraising real property." No such standards or rules appeared on record, and the Court found this failure, along with others noted in the opinion, to be evidence that the county's approach to reappraising property was arbitrary and capricious. By contrast, section 105-278.4 enumerates within the body of the statute the requirements necessary to qualify for the exemption. No additional guidelines need be implemented to qualify property as exempt. Accordingly, *McElwee* provides no useful guidance to the case at bar.

In conclusion, we hold that the Commission properly exempted the land in question. We further hold that the statute governing determination of exempt property is constitutional under both the United States and North Carolina constitutions.

III. Wake County's Motion to Amend the Record

After oral argument, Wake County moved, pursuant to N.C. R. App. P. 37, to amend the record on appeal to cover events occurring after the Commission issued its Final Decision on 5 May 1998. The Seminary opposes the motion. Because we have held above that the "present use" of the land controls, we deny the motion.

Affirmed.

Judges WYNN and JOHN concur.