IN RE APPEAL OF APPALACHIAN STUDENT HOUSING CORP.

[165 N.C. App. 379 (2004)]

Such an outcome is entirely logical, as the legislature apparently intended to address separate evils with these different offenses. Assault on a government official criminalizes attacks against police officers and/or other government officials who are in the actual or attempted performance of their duties. Quite differently, malicious conduct by a prisoner proscribes a specific type of conduct that may or may not constitute an "assault": throwing or emitting bodily fluids or excrement "at" a law enforcement officer and/or other government employee.

Accordingly, defendant was not entitled to have assault on a government official submitted to the jury because neither the evidence nor the law would support such an alternative verdict.

━━━━━━━━━

IN THE MATTER: THE APPEAL OF APPALACHIAN STUDENT HOUSING CORPORATION FROM THE DECISIONS OF THE WATAUGA COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING EXEMPTION OF CERTAIN REAL AND PERSONAL PROPERTY FOR TAX YEARS 2001 AND 2002

No. COA03-908

(Filed 20 July 2004)

**1. Taxation— ad valorem—educational exemption—student housing**

The whole record test revealed that the Property Tax Commission erred by holding that real property held in trust by Appalachian Student Housing Corporation for Appalachian State University for student housing was not exempt from ad valorem taxation by the pertinent county for 2001 and 2002, because: (1) equitable property held in trust qualifies as property belonging to the State of North Carolina, and neither the North Carolina Constitution nor N.C.G.S. § 105-278.1(b) requires the State to have legal title in order to exempt the property from taxation; and (2) student housing should be considered incidental to the educational institution.

**2. Real Property— proper governmental use—limited student housing**

The county's cross-assignment of error that if the pertinent property belongs to the State through Appalachian Student Housing Corporation's (ASHC) holding title for the benefit of

**IN RE APPEAL OF APPALACHIAN STUDENT HOUSING CORP.**

[165 N.C. App. 379 (2004)]

Appalachian State University then ASHC's use of the property is in violation of N.C.G.S. §66-58 has no merit, because: (1) ASHC is not providing a service that is ordinarily and customarily rendered by private enterprise even though many private individuals and businesses house students in condominiums, apartments, and other housing since few limit their lessees to the student population of a certain university, as the universities themselves do; and (2) the government may participate in providing that service since limited student housing is not a service normally provided by private enterprise.

Appeal by taxpayer from decision entered 25 March 2003 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 26 April 2004.

*Maupin Taylor, P.A., by Charles B. Neely, Jr., Nancy S. Rendleman and Kevin W. Benedict, and Di Santi, Watson & Capua, by Anthony S. di Santi, for taxpayer Appalachian Student Housing Corporation.*

*Hedrick & Eggers, by Jeffery M. Hedrick, and Eggers, Eggers, Eggers & Eggers, by Rebecca Eggers-Gryder and Stacy C. Eggers, IV, for Watauga County.*

MARTIN, Chief Judge.

Appalachian Student Housing Corporation (ASHC) appeals from a decision by the North Carolina Property Tax Commission holding that real property held in trust by ASHC for Appalachian State University (ASU) was not exempt from *ad valorem* taxation by Watauga County (County).

The subject property is known as the University Highlands apartment complex, which is situated on a 37.269 acre lot in Watauga County, located approximately two and one-half miles from the ASU campus. ASU Students began moving into the complex as tenants in August 2000. The property contains ten buildings that have 768 bedrooms in two and four-bedroom apartments. Each apartment at University Highlands is connected to the ASU computer network. A management and maintenance office, study carrels, group study and meeting space, a computer lab, and a clubhouse are located on the property, in addition to weightlifting equipment, aerobic exercise space, tennis courts, basketball goals, a walking trail and a swimming pool.

IN RE APPEAL OF APPALACHIAN STUDENT HOUSING CORP.

[165 N.C. App. 379 (2004)]

ASHC manages the daily operations of University Highlands apartments. ASHC limits rental availability to ASU students, though some students at community colleges that participated in the Appalachian Learning Alliance program were initially allowed to live in University Highlands. Each potential lessee must prove his or her current enrollment status at ASU before being granted a lease. The lease terms for the apartments mirror ASU's academic calendar. If a student has a complaint concerning the operation of University Highlands he or she must appeal that matter to the ASU Office of Student Development, which is the same process that is followed when a student has a complaint while living in a traditional ASU residence hall.

Plans to build University Highlands took shape in 1998, when ASU faced a student housing shortage due to aging residence halls and an increase in student enrollment. The Board of Governors of the University of North Carolina endorsed the use of privately funded student housing in order to meet this need. At least four other UNC-system member schools have developed plans to construct student housing managed by non-profit corporations for those institutions, including North Carolina Agricultural and Technical University, the University of North Carolina at Pembroke, Fayetteville State University and Winston-Salem State University.

ASHC was originally incorporated as ASU Housing Foundation, Inc. (Housing Foundation) on 19 August 1999 by ASU as a non-profit corporation to fund construction of the project and manage University Highlands once construction was complete. The Articles of Incorporation stated "the purpose of ASU Housing Foundation shall be to develop, finance, prepare, provide and supervise residential housing facilities for the students and faculty of [ASU]." In the event of dissolution of the corporation, all its corporate assets are to be transferred to ASU. The ASU Chancellor and two Vice Chancellors served as officers and directors of Housing Foundation. The ASU Board of Trustees approved the construction project and formation of the corporation.

After construction of the University Highlands complex was completed in September 2000, ASHC bought the real property and improvements from the developer for approximately $24 million. On 7 June 2001, ASHC and ASU executed a document entitled "Trust Agreement", which contained the following clause:

All funds and property received by ASHC shall be held in trust and used or expended for the benefit of ASU to the extent such expenditure is not inconsistent with lawful restrictions . . . ASHC may, from time to time, transfer any net revenue from its operations to ASU for support of student housing acquisition, development and operation. ASHC shall not transfer any funds or other assets to any person or entity other than ASU except in exchange for capital assets, goods or services at fair market value.

ASHC qualified for tax exempt status under the Internal Revenue Code as a section 501 (c)(3) non-profit corporation and is not subject to State or Federal income taxes. On 27 June 2000, ASHC and the Town of Boone executed an agreement which prohibits ASHC from transferring legal title to the property to ASU until 2025.

On 9 February 2001, ASHC requested a property tax exemption from Watauga County for the 2001 tax year, which was denied by the Watauga County Board of Commissioners on 21 August 2001. ASHC timely filed an appeal to the North Carolina Property Tax Commission (Commission) on 13 September 2001. On 11 January 2002, ASHC filed an application for a property tax exemption for the 2002 tax year, which was denied on 10 October 2002. The Commission, sitting as a board of equalization and review, consolidated ASHC's appeals from the 2001 and 2002 tax exemption applications.

The Commission affirmed the County's denial of exemption after the presentation of ASHC's evidence. The Commission found: "The operation of a student housing facility is not a use that qualifies under the statutes of North Carolina as an educational purpose" and that "the subject student housing facility is not owned by Appalachian State University[.]" As a result, the Commission concluded, in pertinent part:

4. The Taxpayer, Appalachian Student Housing Corporation, did not show that the subject property is wholly and exclusively used for an educational purpose since student housing is not an activity that is naturally and properly incident to the operation of an educational institution. Thus, the subject property is not used for an educational purpose and is not entitled to exemption pursuant to N.C. Gen. Stat. § 105-278.4. .

5. The Taxpayer has failed to prove that the use of the subject property in question was wholly and exclusively for charitable

or educational, scientific or literary purposes. The Taxpayer neither meets the ownership or use requirements for an exemption from ad valorem taxation pursuant to N.C. Gen. Stat. §§ 105-278.6 or 105-278.7.

6. The Taxpayer's exemption requests for the subject property must be denied because the subject property is not entitled to exemption from ad valorem taxation pursuant to N.C. Gen. Stat. § 105-278.1.

## I.

The standard of review for decisions of the Property Tax Commission is contained within N.C. Gen. Stat. § 105-345.2(b):

So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (2003). "In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party . . . ." N.C. Gen. Stat. § 105-345.2(c) (2003). In its review, "[t]he court may not consider the evidence which in and of itself justifies the [Commission's] decision without [also] taking into account the contradictory evidence or other evidence from which conflicting inferences could be drawn." *In re Moses H. Cone Memorial Hospital*, 113 N.C. App. 562, 571, 439

S.E.2d 778, 783 (1994) (citation omitted). "[T]he legal effect of evidence and the ultimate conclusions drawn by an administrative tribunal from the facts . . . are questions of law" that are decided under *de novo* review. *Employment Security Com. v. Kermon*, 232 N.C. 342, 345, 60 S.E.2d 580, 583 (1950); *see In re Appeal of The Greens of Pine Glen Ltd. Part.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). However, "the 'whole record' test is not a tool of judicial intrusion; 'instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence.' " *In re Appeal of Owens*, 132 N.C. App. 281, 286, 511 S.E.2d 319, 323 (1999) (citation omitted).

The taxpayer, ASHC, bears the burden of proving that its property meets the requirements of an *ad valorem* taxation exemption. *See In re Appeal of Atlantic Coast Conference*, 112 N.C. App. 1, 4, 434 S.E.2d 865, 867 (1993), *aff'd per curiam*, 336 N.C. 69, 441 S.E.2d 550 (1994). "The general rule established by the Constitution is that all property in this State is liable to taxation, and shall be taxed in accordance with a uniform rule. Exemption of specific property, because of its ownership by the State or by municipal corporations, or because of the purposes for which it is held and used, is exceptional." *Hospital v. Rowan County*, 205 N.C. 8, 10, 169 S.E. 805, 806 (1933) (quoting *Latta v. Jenkins*, 200 N.C. 255, 156 S.E. 857 (1931)). The taxation laws "should be construed strictly, when there is room for construction, against exemption and in favor of taxation." *Hospital*, 205 N.C. at 11, 169 S.E. at 806.

[1] Here, ASHC argues that the property in question should be exempted from *ad valorem* taxation for several reasons: (1) the property belongs to the State, exempting the property under N.C. Const. art. V, § 2 and N.C. Gen. Stat. §§ 116-16 and 105-278.1(b); (2) the property is owned by a non-profit educational organization and is used exclusively for educational purposes, exempting the property under N.C. Gen. Stat. § 105-278.4; and (3) the property is owned by a non-profit charitable organization and is used exclusively for charitable purposes, exempting the property under N.C. Gen. Stat. § 105-278.7. The Property Tax Commission rejected each basis for ASHC's request for exemption.

The North Carolina Constitution states: "Property belonging to the State, counties, and municipal corporations shall be exempt from taxation." N.C. Const. art. V, § 2(3). This exemption for State-owned property is reiterated in N.C. Gen. Stat. § 105-278.1(b)

(2003): "Real and personal property belonging to the State, counties, and municipalities is exempt from taxation." Specifically, the General Assembly has stated that "[t]he lands and other property belonging to the University of North Carolina shall be exempt from all kinds of public taxation." N.C. Gen. Stat. § 116-16 (2003). Appalachian State University is part of the University of North Carolina. *See* N.C. Gen. Stat. § 116-4 (2003). Therefore, all real and personal property owned by ASU is owned by the State of North Carolina and exempt from taxation.

ASHC contends that the University Highlands apartment complex was owned by ASU and therefore is tax-exempt. ASHC argues that while it holds legal title to the property, ASU holds equitable title to the property according to the terms of the 7 June 2001 Trust Agreement. This beneficial ownership, according to ASHC, is sufficient to trigger the exemption from taxation contained within the North Carolina Constitution and the General Statutes.

The question of whether equitable title to property held in trust qualifies as property "belonging to" the State of North Carolina is one of first impression. Therefore, we must determine the meaning of the phrase "belonging to" as it was used in the North Carolina Constitution, art. V, § 2(3) and N.C. Gen. Stat. § 105-278.1(b).

The North Carolina Attorney General has published an advisory opinion that attempted to define "belonging to" as it was used in G.S. § 105-278.1(b). 2000 N.C. AG LEXIS 1. The Town of Ocean Isle Beach, which leased real property from a private owner to provide public beach access and parking, requested the Attorney General's opinion as to whether, by reason of the Town's leasehold interest, such property qualified as property "belonging to" the State under G.S. § 105-278.1(b) so as to be exempt from taxation. The Attorney General opined that the language "belonging to" meant having title to a parcel of land or owning the parcel of land.

In *In re Forestry Foundation*, 296 N.C. 330, 250 S.E.2d 236 (1979), the North Carolina Supreme Court affirmed a Property Tax Commission decision denying an *ad valorem* taxation exemption request, for property owned by the North Carolina Forestry Foundation, Inc., a nonprofit corporation. The Foundation was created to develop new forestry methods and improve timber growing, while also giving financial assistance to the Division of Forestry at North Carolina State University. *Forestry*, 296 N.C. at 331, 250 S.E.2d at 237-38. The Foundation acquired approximately 80,000

acres of land known as the Hoffman Forest, located in Onslow and Jones County. *Forestry*, 296 N.C. at 332, 250 S.E.2d at 238. In 1945, the Foundation granted a 99-year lease to a paper company, which began logging operations on the property. *Id.* Students from North Carolina State University's forestry program were still permitted to conduct research in the Forest. *Forestry*, 296 N.C. at 333, 250 S.E.2d at 238-39. The Supreme Court held that the Forest was not used exclusively for educational or charitable purposes because the paper company was using the property commercially as well, so the property did not qualify for a tax exemption under G.S. §§ 105-275, 105-278.4, and 105-278.6. *Forestry*, 296 N.C. at 339-40, 250 S.E.2d at 241-42. With regard to the State ownership exemption, the Court held as follows:

> We note that the Foundation is the sole owner of the Forest. Examination of this record discloses that the University of North Carolina has no *legal or equitable title* to the land in question. Thus, the land simply does not "belong" to the University of North Carolina.

*Forestry*, 296 N.C. at 340, 250 S.E.2d at 242 (emphasis added). By implication, the Court indicated that either legal or equitable title held by the Foundation would have qualified the property for the state ownership exemption.

Conversely, in *Latta v. Jenkins*, 200 N.C. 255, 156 S.E. 857 (1931), a trustee held title to real property according to the terms of a will, which directed the trustee to sell the property and dedicate 55% of the proceeds from the land sale to various religious and charitable institutions. *Latta*, 200 N.C. at 257, 156 S.E. at 858. The trustee applied for a tax exemption under the use statutes, claiming that the proceeds from the land would be used for charitable, educational and religious purposes in accordance with the statutes. *Id.* However, the Supreme Court refused to exempt the property from taxation since none of the beneficiary organizations owned or occupied any part of the property during the tax year in question. *Latta*, 200 N.C. at 259, 156 S.E. at 859. The Court reasoned:

> In the instant case, the title to all the property on which taxes were levied by Buncombe County for the year 1928, was in the plaintiff, as trustee. The beneficiaries of the trusts had no right, title or interest in the property. They had the right only to certain percentages of the proceeds of the sale of the property, to be paid to them by the plaintiff after the sale of the property at any time

within five years from the date of the judgment and decree of the Superior Court of Mecklenburg County, at December Term, 1927. *Latta*, 200 N.C. at 259, 156 S.E. at 859. The denial of the tax exemption in *Latta* was based upon the use exemption. Since the terms of the trust instructed that the beneficiaries only had an interest in the profits from the sale of the land and not an interest in the rents from the land or a possessory interest in the land itself, the Court held that the land was not presently being used for charitable, religious or educational purposes.

Watauga County contends that our decision in this matter is controlled by *Atlantic R.R. v. Commissioners*, 75 N.C. 474 (1876). In *Atlantic*, the State owned two-thirds of the capital stock in the Atlantic and North Carolina Railroad (Railroad). *Atlantic*, 75 N.C. at 474. The State's controlling interest in the stock of the corporation was held not to exempt the Railroad's land from taxation. *Atlantic*, 75 N.C. at 474. The *Atlantic* Court based its holding upon a requirement that State-owned property be used for a public purpose before the tax exemption would apply, and the Supreme Court has since expressly overruled the public purpose requirement of *Atlantic*. *See In re University of North Carolina*, 300 N.C. 563, 268 S.E.2d 472 (1980). The Supreme Court clarified that its decision in *Atlantic* was correct because the Railroad, rather than the State itself was the owner of the property in question. *University*, 300 N.C. at 567, 268 S.E.2d at 475 ("Even though the State held a controlling interest in the Railroad Company's common stock, the property, both real and personal, belonged to Atlantic and N.C.R.R. Co. and was therefore properly subjected to ad valorem taxation.") However, the Court rejected the proposition that State-owned property was not exempted from taxation unless it was used for a public purpose. *University*, 300 N.C. at 572, 268 S.E.2d at 478. "[The State ownership] exemption follows by virtue of the property's ownership and occurs irrespective of the purposes for which the property is held." *Id.*

The County argues that the equitable interest held by ASU is equivalent to the interest held by the Railroad in *Atlantic*. We disagree. In an active trust, legal title vests in the trustee of the property. *See Fisher v. Fisher*, 218 N.C. 42, 9 S.E.2d 493 (1940). "[W]hen any control is to be exercised or any duty performed by the trustee [in relation to the trust property or in regard to the beneficiaries], however slight it may be . . . the trust is active." *Finch v. Honeycutt*, 246 N.C. 91, 99, 97 S.E.2d 478, 485 (1957) (quoting *Chinnis v. Cobb*, 210 N.C. 104, 185 S.E. 638 (1936)). In an active trust, the legal and equi-

table titles to the trust property do not merge. *See Finch,* 246 N.C. at 91, 97 S.E.2d at 478; *Poindexter v. Trust Co.,* 258 N.C. 371, 128 S.E.2d 867 (1963). Property held in an active trust is therefore "owned" in some sense by both the trustee and the beneficiary.

Here, the trust agreement specifically outlines the relationship between ASHC and ASU. ASHC is required to manage the daily operations of University Highlands apartments. When ASHC receives rents, it must expend that income only in exchange for capital assets or goods and services necessary for the maintenance of the apartment complex. Alternatively, ASHC's income may be directed to ASU, to support ASU student housing. Therefore, the trust agreement between ASHC and ASU is an active trust and ASU's equitable interest in the property remains separate from ASHC's legal interest.

We hold that the equitable title held by ASU as beneficiary of this trust is sufficient to show that the property belongs to the State of North Carolina. Neither the North Carolina Constitution nor G.S. § 105-278.1(b) require the State to have legal title in order to exempt the property from taxation. Nor do we find persuasive Watauga County's argument that the *ad valorem* tax exemption law of North Carolina applies only to exempt property to which the taxpayer holds legal title. Although we recognize that the doctrine of *expressio unius est exclusio* ("expression of one thing is the exclusion of the other") is still the rule in North Carolina, the mention of equitable title in two parts of the Machinery Act (N.C. Gen. Stat. §§ 105-277.1(b) and 105-277.2(4)(a)) does not imply that real property does not belong to the State when it holds only equitable title. Because the real property parcel in question here belongs to the State, it is exempted from *ad valorem* taxation according to both the constitutional exemption in Art. V, § 2 and the statutory exemptions in G.S. §§ 116-16 and 105-278.1(b). As a result, there is insufficient evidence to support the Commission's finding of fact #7, which states that the property is not owned by the State, and we reverse the Commission's decision regarding the requested exemptions for 2001 and 2002.

ASHC argues several other grounds for exemption of the property from taxation, including G.S. §§ 105-278.4 and 105-278.7. Because we have already determined that the property in question is owned by the State of North Carolina so as to exempt it from taxation, we need not reach ASHC's arguments on these points. However, we do write briefly to express our strong disagreement with the Commission's conclusion of law #4 that states "student housing is not an activity

**IN RE APPEAL OF APPALACHIAN STUDENT HOUSING CORP.**

[165 N.C. App. 379 (2004)]

that is naturally and properly incident to the operation of an educational institution." In previous cases, this Court has held that a building where athletic conference television contracts are negotiated, *see In re Appeal of Atlantic Coast Conference*, 112 N.C. App. 1, 434 S.E.2d 865 (1993), and a stadium parking lot, *see In re Wake Forest University*, 51 N.C. App. 516, 277 S.E.2d 91, *disc. rev. denied*, 303 N.C. 544, 281 S.E.2d 391 (1981), are considered "incidental" to the operation of educational institutions so as to qualify for an exemption under N.C. Gen. Stat. § 105-278.4. Certainly student housing, which is one of the more traditional accoutrements of an educational facility, should be considered incidental to the educational institution.

II.

Watauga County made seven cross-assignments of error; only one of which has been brought forward in its brief. The remainder of its cross assignments of error are deemed abandoned. N.C.R. App. P. 28(a).

[2] The County argues that if University Highlands belongs to the State, through ASHC's holding title for the benefit of ASU, then ASHC's use of the property is in violation of N.C. Gen. Stat. § 66-58, which provides in pertinent part:

> [I]t shall be unlawful for any unit, department or agency of the State government, or any division or subdivision of the unit, department or agency, or any individual employee or employees of the unit, department, or agency in his, or her, or their capacity as employee or employees thereof, to engage directly or indirectly in the sale of goods, wares or merchandise in competition with citizens of the State, or to engage in the operation of restaurants, cafeterias or other eating places in any building owned by or leased in the name of the State, or to maintain service establishments for the rendering of services to the public ordinarily and customarily rendered by private enterprises, or to provide transportation services, or to contract with any person, firm or corporation for the operation or rendering of the businesses or services on behalf of the unit, department or agency, or to purchase for or sell to any person, firm or corporation any article of merchandise in competition with private enterprise.

N.C. Gen. Stat. § 66-58(a) (2003). Watauga County argues that ASHC's actions as a State entity leasing property to ASU students is

an example of the government engaging in competition with private enterprise. We do not find this argument persuasive. Without deciding whether ASHC is or is not a State entity, ASHC is not providing a service that is ordinarily and customarily rendered by private enterprise. Although many private individuals and businesses house students in condominiums, apartments and other housing, few limit their lessees to the student population of a certain university, as the universities themselves do. This type of limited student housing is not a service normally provided by private enterprise, so the government may participate in providing that service. We see no violation of G.S. § 66-58 in the apartment rentals at issue in this case, primarily because the lease allows only ASU students to reside in University Highlands. Watauga County's cross-assignment of error is overruled.

For the reasons stated, the Commission's decision is reversed and this cause remanded for entry of a decision exempting the subject property from *ad valorem* taxation.

Reversed and remanded.

Judges HUNTER and THORNBURG concur.