IN THE MATTER OF THE APPEAL OF: Blue Ridge Housing of Bakersville LLC from the decision of the Mitchell County Board of Equalization and Review denying property tax exemption for certain property effective for tax year 2011.

No. COA12-941

Filed 19 March 2013

1. **Taxation—ad valorem—exemption—non-profit status—findings**

    The North Carolina Property Tax Commission did not err in an action involving the ownership of low-income rental housing in finding that the housing in question qualified for a property tax exemption based on Northwestern Housing Enterprises, Inc.'s status as a non-profit. Upon whole record review, every statement in the disputed finding had a rational basis in the evidence.

2. **Taxation—ad valorem—exemption—test for determining ownership**

    Real property is exempt from *ad valorem* taxation if a 100% ownership interest ultimately vests in an entity otherwise satisfying statutory exemption requirements. When an otherwise qualifying entity

has an ownership interest in less than 100% of the property, the actual ownership interest is balanced with other factors indicative of ownership and, if those other factors strongly suggest ownership, they can outweigh even a diminutive actual ownership interest.

**3. Taxation—advalorem—low-income housing—exemption—ownership**

Certain low-income housing was exempt from *ad valorem* taxation where a non-profit corporation created to assist a regional housing authority, Northwestern Housing Enterprises, Inc., held a small actual ownership interest in the housing but other substantial factors indicated ownership for tax purposes.

**4. Constitutional Law—equal protection—property tax exemption—low-income housing**

Neither the Equal Protection Clause of the United States Constitution nor the Uniformity Clause of the North Carolina Constitution were violated by disparate decisions concerning *ad valorem* taxation exemptions for low-income housing where the evidence indicated that all of the counties involved applied a uniform rule. The varied outcomes appeared to result simply from good faith applications of a statutory requirement.

Appeal by Mitchell County from final decision entered 28 February 2012 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 10 January 2013.

*David A. Gitlin for taxpayer-appellee.*

*Hal G. Harrison for Mitchell County-appellant.*

HUNTER, JR., Robert N., Judge.

Mitchell County (the "County") appeals from a final decision of the North Carolina Property Tax Commission (the "Commission") reversing the decision of the Mitchell County Board of Equalization and Review (the "County Board"). Upon review, we affirm the Commission's decision.

## I. Facts & Procedural History

Blue Ridge Housing of Bakersville, LLC ("Blue Ridge Housing") owns Cane Creek Village, the property at issue. Cane Creek Village is

a 24-unit apartment project in Bakersville that provides rental housing to families whose annual income is less than 50% of the median family income for the region.

Preliminarily, we discuss the administrative framework behind the development of Cane Creek Village. The Northwestern Regional Housing Authority ("NRHA") is a public housing agency organized under N.C. Gen. Stat. Ch. 157. It is headquartered in Boone. The NRHA provides low-income housing for families living in North Carolina's mountainous counties. It also distributes federal rental assistance, funded by the Department of Housing and Urban Development ("HUD"), to the residents of these housing projects.

The Low-Income Housing Tax Credit Program, established by the Internal Revenue Service, provides a federal income tax credit for organizations like the NRHA that develop low-income housing. *See* 26 U.S.C. § 42 (2012). Although this program benefits the NRHA, it would also jeopardize the NRHA's ability to administer rent subsidies from HUD.[1] To avoid this problem, the NRHA oversaw the creation of Northwestern Housing Enterprises, Inc. ("NHE") as a separate entity to collect tax credits for the NRHA's new housing developments.

NHE is a 501(c)(3) non-profit corporation. Edward G. Fowler ("Fowler") is the Executive Director of the NRHA, the Vice President and CEO of NHE, and its sole employee. According to NHE's Articles of Incorporation, its purpose is "to assist the Northwestern Regional Housing Authority within its jurisdictions with its stated goals and purposes" and to "provide for the relief of the poor and distressed . . . through the development, creation, ownership, sponsorship, financing, building and maintenance of low and moderate income housing." NHE has developed seven low-income housing projects in seven North Carolina counties. Despite their shared goals and resources, the NRHA does not own any portion of NHE.

NHE qualifies to receive a federal income tax credit under the Low-Income Housing Tax Credit Program. However, since it is a non-profit organization, it is exempt from federal income tax.[2] Therefore, by

---

1. At the Commission hearing, NRHA's Executive Director testified that direct NRHA sponsorship of housing developments would result in unnecessary federal oversight. Also, he elaborated that logistical difficulties would arise if the NRHA directly sponsored the housing projects because it would then effectively distribute rent subsidies to itself.

2. Non-profit organizations such as NHE still routinely take advantage of the Low-Income Housing Tax Credit Program. In fact, according to North Carolina's Low-Income Housing Tax Credit Qualified Allocation Plan, the North Carolina Housing Finance Agency

**IN RE APPEAL OF BLUE RIDGE HOUS. OF BAKERSVILLE, LLC**

[226 N.C. App. 42 (2013)]

itself, NHE does not benefit from the Low-Income Housing Tax Credit Program. To leverage the benefits of this program, NHE partners with investors who have a federal income tax burden. The investors finance NHE's housing developments in exchange for tax credit equity. The investors can then use the federal income tax credits for their own federal tax burden.[3]

In August 1998, NHE established Blue Ridge Housing as the record owner of Cane Creek Village, one such low-income housing project. Blue Ridge Housing does not have non-profit status. The sole purpose of Blue Ridge Housing is to hold legal title of Cane Creek Village for induction of tax credit equity; it does not have any employees or own any other properties.

Blue Ridge Housing, a limited liability company ("LLC"), has two members. Its managing member, NHE, owns 0.1% of Blue Ridge Housing. Its investor member, the North Carolina Equity Fund III Limited Partnership ("NCEFIII") owns 99.9%. The NCEFIII invested $1,164,439 in exchange for its ownership interest.[4] The general partner of the NCEFIII is Carolina Affordable Housing Equity Corporation ("CAHEC"). CAHEC

---

must allocate at least 10% of North Carolina's federal tax credit ceiling to low-income hous ing projects sponsored by non-profits. *See* North Carolina Housing Finance Agency, *The 2012 Low-Income Housing Tax Credit Qualified Allocation Plan for the State of North Carolina* 6 (2012), *available at* http://www.nchfa.com/Forms/QAP/2012/FinalQAP.pdf.

3. According to the North Carolina Housing Finance Agency, "Low-Income Housing Tax Credits (Housing Credits) now finance virtually all the new affordable rental housing being built in the United States." *Where the Financing Comes From*, North Carolina Housing Finance Agency, http://www.nchfa.com/about/financingfrom.aspx (last visited 7 March 2013); *see also How do Housing Credits Work*, U.S. Dep't of Hous. and Urban Dev., http://portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/affordablehousing/training/web/lihtc/basics/work (last visited 7 March 2013). For a contemporary journalistic assessment of low-income housing financing, see Terry Pristin, *Who Invests in Low-Income Housing? Google, for One*, N.Y. Times, 25 January 2011, *available at* http://www.nytimes.com/2011/01/26/realestate/commercial/26credits.html?_r=0.

4. According to HUD:

Limited liability companies (LLC) are an increasingly common ownership structure for [low-income housing projects]. A typical [low-income housing tax credit] LLC consists of the developer (or an affiliate) as the managing member, and the credit purchaser as an additional (non-managing) member. The managing member has a small percentage ownership interest (often below 1 percent), but has the responsibility to manage the affairs of the partnership, arrange for the management of the property, and make most of the day-to-day operating decisions. The non-managing member has a large percentage ownership interest (often well above 99 percent), and has a passive investor role. All members of an LLC have liability that is limited to the amount invested. That is, if a disaster occurs,

IN RE APPEAL OF BLUE RIDGE HOUS. OF BAKERSVILLE, LLC

[226 N.C. App. 42 (2013)]

is "a consortium of . . . banks from eight southeastern states, and some insurance funds and other investors." Although the NCEFIII is a for-profit partnership, its general partner CAHEC is a non-profit.

On 17 November 1998, NHE and the NCEFIII entered into an operating agreement (the "Operating Agreement"). The Operating Agreement requires the NCEFIII to maintain its ownership interest in Blue Ridge Housing for 15 years. It also provides NHE with a right of first refusal to purchase the NCEFIII's 99.9% ownership interest at the end of the 15-year term. At the onset of the instant case, four years remained of the 15-year term. NHE has stated it intends to buy the NCEFIII's ownership interest at the end of the 15-year term. NHE is currently in the process of exercising its right of first refusal for another similar low-income housing project in Yancey County.

Blue Ridge Housing employed the NRHA to develop the apartment complex at Cane Creek Village. The project was financed by investors from the NCEFIII. Construction began on 1 November 1998 and finished in December 2000.

Although exempt from federal income taxation, Cane Creek Village is subject to North Carolina *ad valorem* property tax. On 23 August 2000, NHE, as managing member of Blue Ridge Housing, submitted an Application for Property Tax Exemption to the Mitchell County Tax Assessor. It based its application on N.C. Gen. Stat. § 105-278.6(a)(8), which provides that:

> (a)  Real or personal property owned by:
>
> . . .
>
> (8)  A nonprofit organization providing housing for individuals or families with low or moderate incomes shall be exempted from taxation if: (i) As to real property, it is actually and exclusively occupied and used, and as to personal property, it is entirely and completely used, by the owner for charitable purposes; and (ii) the owner is not organized or operated for profit.

the most they can lose is the amount invested. The rights and obligations of the partners are described in an LLC Operating Agreement.

*Syndication*, U.S. Dep't of Hous. and Urban Dev., http://portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/affordablehousing/training/web/lihtc/basics/syndication (last visited 3 March 2013).

**IN RE APPEAL OF BLUE RIDGE HOUS. OF BAKERSVILLE, LLC**

[226 N.C. App. 42 (2013)]

N.C. Gen. Stat. § 105-278.6(a)(8) (2011). On 4 October 2000, the Mitchell County Board of Commissioners unanimously voted to grant an *ad valorem* tax exemption to Cane Creek Village. Since October 2000, there has been no change in the use of the property or in Blue Ridge Housing's equity structure.

NHE also applied for *ad valorem* tax exemptions for its six other low-income housing projects in six other North Carolina counties. It received exemptions for four of its other projects, but did not receive exemptions for its projects in Ashe County or Wilkes County. Nothing in the record indicates NHE has contested its two denied applications.

Pursuant to N.C. Gen. Stat. § 105-282.1, each county tax assessor must annually review at least one-eighth of tax-exempt property in the county. Accordingly, around January 2011, Mitchell County Tax Assessor Blair Hyder ("Hyder") reviewed Cane Creek Village's tax-exempt status. On 6 January 2011, Hyder notified NHE that because he believed Cane Creek Village was not tax-exempt, he intended to undertake discovery proceedings pursuant to N.C. Gen. Stat. § 105-312. Hyder cited N.C. Gen. Stat. § 105-277.16 as the controlling statute. The statute, which took effect on 1 July 2009, states:

> A North Carolina low-income housing development to which the North Carolina Housing Finance Agency allocated a federal tax credit under section 42 of the Code is designated a special class of property under Article V, Section 2(2) of the North Carolina Constitution and must be appraised, assessed, and taxed in accordance with this section.

N.C. Gen. Stat. § 105-277.16 (2011). After Hyder initiated discovery proceedings, NHE subsequently provided Hyder with all requested financial information.

Hyder concluded Cane Creek Village should never have received tax-exempt status because NHE did not have a sufficient ownership interest in Blue Ridge Housing to qualify Cane Creek Village for exemption under N.C. Gen. Stat. § 105-278.6(a)(8). On 17 March 2011, Hyder presented NHE with a tax bill for $64,837.72[5] for the preceding five years, composed as follows: $24,066.48 for Mitchell County taxes; $9,922.87

---

5. The order on final pre-hearing conference erroneously calculated the total amount owed as $60,437.72.

for Mitchell County penalties; $21,749.28 for Town of Bakersville taxes; $9,099.09 for Town of Bakersville penalties.[6]

NHE promptly appealed this decision to the Mitchell County Board. The County Board held a hearing on 11 April 2011. On 10 May 2011, it decided to waive the Mitchell County penalties and only enforce the Mitchell County taxes of $24,066.48.[7] On 6 June 2011, Blue Ridge Housing appealed the County Board's decision and applied for a hearing with the Commission.

The Commission held a hearing on 14 December 2011. On 28 February 2012, it decided Cane Creek Village qualifies for *ad valorem* tax exemption under N.C. Gen. Stat. § 105-278.6(a)(8). Mitchell County filed timely notice of appeal on 19 March 2012.

## II. Jurisdiction & Standard of Review

This Court has jurisdiction to hear the instant appeal pursuant to N.C. Gen. Stat. § 7A-29 (2011). When reviewing a decision of the North Carolina Property Tax Commission:

> the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or

---

6. The five-year tax period is based on N.C. Gen. Stat. § 105-312(f), which states: "When property is discovered and listed to a taxpayer in any year, it shall be presumed that it should have been listed by the same taxpayer for the preceding five years unless the taxpayer shall produce satisfactory evidence that the property was not in existence, that it was actually listed for taxation, or that it was not his duty to list the property during those years or some of them." N.C. Gen. Stat. § 105-312(f)(2011).

7. On 10 October 2011, Bakersville's Town Council agreed to delay enforcement of the Town of Bakersville taxes and penalties pending outcome of the Commission hearing.

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (2011). "In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error." N.C. Gen. Stat. § 105-345.2(c) (2011). The court "may not consider the evidence which in and of itself justifies the [Commission's] decision without [also] taking into account the contradictory evidence or other evidence from which conflicting inferences could be drawn." *In re Moses H. Cone Mem'l Hosp.*, 113 N.C. App. 562, 571, 439 S.E.2d 778, 783 (1994) (quotation marks and citation omitted) (alterations in original). "The taxpayer . . . bears the burden of proving that its property meets the requirements of an *ad valorem* taxation exemption." *In re Appalachian Student Housing Corp.*, 165 N.C. App. 379, 384, 598 S.E.2d 701, 704 (2004).

Therefore, under N.C. Gen. Stat. § 105-345.2(b), "[q]uestions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test." *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). Additionally, "[i]ssues of statutory construction are questions of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

"Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the Commission. Under the whole-record test, however, the reviewing court merely determines 'whether an administrative decision has a rational basis in the evidence.' " *Greens of Pine Glen Ltd.*, 356 N.C. at 647, 576 S.E.2d at 319 (internal citations omitted).

## III. Analysis

On appeal, Mitchell County makes four arguments: (i) the Commission erred because Finding of Fact No. 15 incorrectly implies government participation in Cane Creek Village's operations; (ii) the Commission erred because Finding of Fact No. 16 incorrectly asserts Cane Creek Village is exempt from *ad valorem* taxation; (iii) the Commission erred because Conclusions of Law 3, 4, and 5 incorrectly apply N.C. Gen. Stat. § 105-278.6(a)(8); and (iv) the Commission violated the Uniformity Clause of the North Carolina Constitution and the Equal

IN RE APPEAL OF BLUE RIDGE HOUS. OF BAKERSVILLE, LLC

[226 N.C. App. 42 (2013)]

Protection Clause of the U.S. Constitution. Upon review, we affirm the Commission's decision.

## A.  Implication of Federal Involvement

[1]  Mitchell County first argues the Commission erred because Finding of Fact No. 15 incorrectly implies the NRHA, a public agency, participated in the development of Cane Creek Village. We disagree.

Since Mitchell County appeals the Commission's finding of fact, we apply the whole record test. *See id.* ("[I]ssues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test."). Under the whole record test, we decide "whether an administrative decision has a rational basis in the evidence." *Id.* (quotation marks and citation omitted).

In the present case, Finding of Fact No. 15 states, in its entirety:

15.  NHE is a nonprofit organization that assists Northwestern Regional Housing Authority with providing housing for individuals or families with low or moderate income in Wilkes, Yancey, Avery, Alleghany, Ashe, Watauga and Mitchell Counties. NHE, as managing member of [Blue Ridge Housing], holds a one-tenth percent (.1%) ownership interest in the subject property.

Nothing in this finding of fact implies the NRHA, a public agency, participated in Cane Creek Village's operations. Similarly, nothing in the record indicates the Commission based its decision on a purported legal connection between NHE and the NRHA.[8] In fact, we find no implication by either the Commission or Blue Ridge Housing that Cane Creek Village should receive an *ad valorem* tax exemption based on a purported connection to the NRHA. Rather, the Commission determined Cane Creek Village qualified for property tax exemption based on NHE's status as a non-profit. *See* N.C. Gen. Stat. § 105-278.6(a)(8).

Moreover, upon our review of the whole record, every statement in Finding of Fact No. 15 has a "rational basis in the evidence." *Greens*

8.  We note that several cases cited by the taxpayer-appellee, including *In re Appeal of Fayette Place LLC*, 193 N.C. App. 744, 745, 668 S.E.2d 354, 356 (2008), and *Appalachian Student Housing Corp.*, 165 N.C. App. at 384, 698 S.E.2d at 704, deal with properties owned by government entities under N.C. Gen. Stat. § 105-278.1 (2011). We do not believe the taxpayer-appellee intended, nor did the Commission construe, these references as an argument for exemption under N.C. Gen. Stat. § 105-278.1. Rather, we conclude the taxpayer-appellee cited those cases to support its argument that control of legal title is not dispositive of the question of ownership.

*of Pine Glen Ltd.*, 356 N.C. at 647, 576 S.E.2d at 319 (internal citation omitted). NHE is a 501(c)(3) non-profit organization. According to its Articles of Incorporation, NHE's purpose is "to assist the Northwestern Regional Housing Authority within its jurisdictions with its stated goals and purposes." NHE operates in Wilkes, Yancey, Avery, Alleghany, Ashe, Watauga and Mitchell Counties. The Operating Agreement indicates NHE is managing member of Cane Creek Village, while NCEFIII is an investor member. The Operating Agreement further specifies that NHE has a 0.1% ownership interest in Cane Creek Village. The parties do not dispute any of these facts.

Consequently, we conclude the Commission did not err in Finding of Fact No. 15 because its findings had a "rational basis in the evidence." *Id.*

### B. Ownership by a Non-Profit

[2] Mitchell County next argues: (i) the Commission erred because Finding of Fact No. 16 incorrectly states NHE's ownership interest exempts Cane Creek Village from *ad valorem* taxation; and (ii) the Commission erred because Conclusions of Law Nos. 3, 4, and 5 incorrectly conclude the exemption was proper and Hyder's discovery proceedings were improper. We do not agree.

In North Carolina, "All property . . . , both real and personal, is subject to property tax unless it was excluded or exempted from taxation by statute or the Constitution." *Edward Valves, Inc. v. Wake County*, 117 N.C. App. 484, 489, 451 S.E.2d 641, 645 (1995); *see also* N.C. Gen. Stat. § 105-274 (2011).

N.C. Gen. Stat. § 105-278.6(a)(8) provides one such exemption:

(a) Real or personal property owned by:

. . .

(8) A nonprofit organization providing housing for individuals or families with low or moderate incomes shall be exempted from taxation if: (i) As to real property, it is actually and exclusively occupied and used, and as to personal property, it is entirely and completely used, by the owner for charitable purposes; and (ii) the owner is not organized or operated for profit.

N.C. Gen. Stat. § 105-278.6(a)(8) (2011).

Since the relevant statute does not define "ownership" for purposes of tax exemption, *see* N.C. Gen. Stat. § 105-273 (2011), we rely on

canons of statutory construction to define the term, *see Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 295 (1991).

> The principal goal of statutory construction is to accomplish the legislative intent. The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish. If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so.

*Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (quotation marks and internal citations omitted).

Additionally, "[w]hen the statute under consideration is one concerning taxation, special canons of statutory construction apply. If a taxing statute is susceptible to two constructions, any uncertainty in the statute or legislative intent should be resolved in favor of the taxpayer." *Id.* (internal citations omitted). "Conversely, a provision in a tax statute providing an exemption from the tax, otherwise imposed, is to be construed strictly against the taxpayer and in favor of the State." *In re Appeal of Clayton-Marcus Co., Inc.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202 (1974).

Still, for purposes of tax exemption, this Court has previously held that "legal title is not determinative as to the question of ownership." *Fayette Place LLC*, 193 N.C. App. at 747, 668 S.E.2d at 357. Instead, "[w]here [an entity qualifying for a tax exemption] possesses a sufficient interest in the property, . . . the property is said to belong to [that entity] even where legal title to the property is held by another party." *Id.* Our holding in *Fayette Place* is binding precedent on this Court. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

In the present case, Mitchell County argues NHE does not own Cane Creek Village because it only has a 0.1% ownership interest in Blue Ridge Housing. Therefore, according to Mitchell County, Cane Creek Village cannot receive a tax exemption under N.C. Gen. Stat. § 105-278.6(a)(8). Mitchell County does not contest that Cane Creek Village meets the other conditions of N.C. Gen. Stat. § 105-278.6(a)(8),

including the "charitable purposes" requirement. Upon review, we disagree with Mitchell County.

Specifically, Mitchell County disputes Finding of Fact No. 16 and Conclusions of Law Nos. 3, 4, and 5. Finding of Fact No. 16 states:

> 16. NHE ownership interest in [Blue Ridge Housing] allows the subject property to qualify for exemption from *ad valorem* taxation such that it should be exempt from ad valorem taxation; and the Mitchell County Assessor's discovery of the subject property, under N.C. Gen. Stat. § 105-312, and the County Board's decision to uphold discovery is not proper under the provisions of the North Carolina Machinery Act and applicable North Carolina Law.

Conclusions of Law Nos. 3, 4, and 5 state:

> 3. The subject property, [Cane Creek Village], is actually and exclusively occupied and used as housing for families with low to moderate incomes; and NHE possesses an ownership interest in [Cane Creek Village] such that the property qualifies for exemption from *ad valorem* taxation as provided in N.C. Gen. Stat. 105-278.6(a)(8).

> 4. Since [Cane Creek Village] qualifies for exemption from *ad valorem* taxation pursuant to N.C. Gen. Stat. 105-278.6(a)(8), then the Mitchell County Assessor's discovery and taxation of the subject property, and the County Board's decision to uphold the discovery and taxation is not proper under the provisions of the Machinery Act and applicable North Carolina Law.

> 5. The Commission reaches no ruling on the principle of equitable estoppel when [Cane Creek Village] qualifies for exemption under N.C. Gen. Stat. 105-278.6(a)(8); and when the county's discovery and taxation of the subject property was not proper under North Carolina law.

Preliminarily, we determine this argument receives *de novo* review. Although findings of fact normally receive "whole record" analysis, *Greens of Pine Glen Ltd.*, 356 N.C. at 647, 576 S.E.2d at 319 (2003), Finding of Fact No. 16 amounts to a legal conclusion because it determines the applicability of N.C. Gen. Stat. § 105-278.6(a)(8), *see North Carolina State Bar v. Brewer*, 183 N.C. App. 229, 233, 644 S.E.2d 573, 576 (2007) ("Questions of statutory interpretation are questions of law,

which are reviewed *de novo* by an appellate court." (quotation marks and citation omitted)).

The instant case is one of first impression in North Carolina. Still, we are guided by analogous precedent analyzing the state ownership requirement of N.C. Gen. Stat. § 105-278.1 (2011).[9]

For instance, in *Fayette Place LLC*, we considered whether a property satisfied the state ownership requirement for tax exemption under N.C. Gen. Stat. § 105-278.1. 193 N.C. App. at 745, 668 S.E.2d at 356. There, like in the instant case, a limited liability company directly owned the subject property. *Id.* at 745, 668 S.E.2d at 355. A non-profit organization, in turn, owned 99% of the LLC, while a for-profit subsidiary of the non-profit owned the remaining 1%. *Id.* Ownership of the non-profit and its subsidiary ultimately vested 100% in the Housing Authority of the City of Durham (the "Durham Housing Authority"). *Id.* The Durham Housing Authority otherwise met the statutory tax exemption requirements. *Id.* at 748, 668 S.E.2d at 357. In *Fayette Place*, this Court determined the property was exempt because it "belonged to" the Durham Housing Authority for tax exemption purposes. *Id.* at 748, 668 S.E.2d at 357.

Similarly, in *Appalachian Student Housing Corp.*, a non-profit corporation managed an apartment complex in trust for Appalachian State University ("Appalachian State"), pursuant to an explicit trust agreement. 165 N.C. App. at 381, 698 S.E.2d at 702. There, we recognized that as trustee of an active trust, the non-profit held legal title of the property. *Id.* at 387, 698 S.E.2d at 706. Still, we held that as beneficiary of the active trust, Appalachian State had equitable title, satisfying the state ownership requirement of N.C. Gen. Stat. § 105-278.1. *Id.* at 388, 698 S.E.2d at 706.

These precedential cases illustrate that control of legal title is not determinative of ownership. As such, we are bound by that conclusion. *See Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37. However, previous case law does not provide a readily-applicable standard for defining "ownership" in the absence of legal title. Therefore, we now establish a test to determine ownership for purposes of tax exemption. If 100% ownership interest ultimately vests in an entity otherwise satisfying statutory exemption requirements, then the property is exempt from taxation. *See Fayette Place*, LLC, 193 N.C. App. at 748, 668 S.E.2d at 357.

---

9. N.C. Gen. Stat. § 105-278.1 provides a tax exemption for real and personal property "owned by the United States" or "belonging to the State, counties, and municipalities." N.C. Gen. Stat. § 105-278.1(a), (b) (2011). The statute explicitly includes property owned by housing authorities. N.C. Gen. Stat. § 105-278.1(c)(3)(d) (2011).

When an otherwise-qualifying entity has an ownership interest in less than 100% of the property, we balance the actual ownership interest with other factors indicative of ownership. If other factors strongly suggest ownership, they can outweigh even a diminutive actual ownership interest. These factors may include, but are not limited to: (i) the entity's control of the venture's operations; (ii) the entity's status as trustee of LLC property; (iii) the possibility of future increased actual ownership interest; and (iv) the intent of the participating parties.

[3] We now apply this test to the instant case. First, we note that NHE does not own 100% of Cane Creek Village. In fact, it has only a 0.1% ownership interest. Still, since NHE maintains some actual ownership interest in Cane Creek Village, we balance this interest with other factors indicative of ownership. Since NHE's actual ownership interest is small, it must present significant evidence of other factors suggesting ownership. We believe NHE meets this burden. Specifically, we consider: (i) NHE's control of Cane Creek Village's operations; (ii) NHE's role as trustee of Blue Ridge Housing's property; (iii) NHE's right of first refusal to purchase the NCEFIII's 99.9% ownership interest; and (iv) the intent of NHE and the NCEFIII.

First, we consider NHE's control of Cane Creek Village's operations. In North Carolina, except as otherwise specified by the parties, "management of the affairs of the limited liability company shall be vested in the managers." N.C. Gen. Stat. § 57C-3-20(b) (2011). In the instant case, the Operating Agreement between NHE and the NCEFIII specifies that NHE is the sole managing member. Since Blue Ridge Housing's creation, NHE has in fact acted as the sole manager, making operational decisions for Blue Ridge Housing and Cane Creek Village. For example, NHE initially applied for Cane Creek Village's *ad valorem* tax exemption on 23 August 2000. NHE also communicated with Hyder throughout his discovery proceedings and gave him all relevant financial documents. Furthermore, at all stages of the instant litigation, NHE has acted on behalf of Blue Ridge Housing. Therefore, we conclude NHE's managerial control of Blue Ridge Housing and Cane Creek Village is one factor indicative of ownership.

Second, we examine NHE's role as trustee of Cane Creek Village. In North Carolina, managing members of LLCs may become trustees of LLC property:

> Except as otherwise provided in the articles of organization or a written operating agreement, every manager must account to the limited liability company and hold as

trustee for it any profit or benefit derived without the informed consent of the members by the manager from any transaction connected with the formation, conduct, or liquidation of the limited liability company.

N.C. Gen. Stat. § 57C-3-22(e) (2011). Trusts may take several forms. For instance, "an 'active trust' is one where there is a special duty to be performed by the trustee in respect to the estate, such as collecting the rents and profits, or selling the estate, or the execution of some particular purpose." *Finch v. Honeycutt*, 246 N.C. 91, 99, 97 S.E.2d 478, 484–85 (1957) (quotation marks and citation omitted); *see also Appalachian Student Housing Corp.*, 165 N.C. App. at 387, 698 S.E.2d at 706 ("[W]hen any control is to be exercised or any duty performed by the trustee [in relation to the trust property or in regard to the beneficiaries], however slight it may be . . . the trust is active." (alterations in original)(quotation marks and citation omitted)).

In *Appalachian Student Housing Corp.*, we held that when one entity manages an apartment complex for the benefit of another, an active trust arises. 165 N.C. App. at 387, 698 S.E.2d at 706. In that case, we described how "[i]n an active trust, the legal and equitable titles to the trust property do not merge. Property held in an active trust is therefore 'owned' in some sense by both the trustee and the beneficiary." *Id.* at 387–88, 698 S.E.2d at 706; *see also id.* at 387, 698 S.E.2d at 706 ("In an active trust, legal title vests with the trustee of the property."). Here, an active trust exists since NHE manages the ongoing operations of Blue Ridge Housing and Cane Creek Village. Therefore, we weigh NHE's role as trustee of Cane Creek Village as an additional indicia of ownership.

Third, we look at NHE's potential future ownership interest in Cane Creek Village. In the Operating Agreement, NHE has a right of first refusal to purchase the NCEFIII's 99.9% ownership interest at the end of a 15-year term. At the start of the instant litigation, four years remained of this term. NHE routinely uses this type of provision in its operating agreements with investors. In fact, Fowler testified that NHE is currently exercising its right of first refusal for Woodland Hills, a similar NHE project in Yancey County. Fowler predicted the same course of action for Cane Creek Village: "[NHE's Board of Directors] will want to exercise [the right of first refusal] because their mission is to develop affordable housing in the mountain counties. To maintain it affordable to those who need it. [*sic*]" He said NHE's ultimate goal is "that NHE will wind up as 100 percent owner of [Cane Creek Village]." Consequently, although we acknowledge that NHE's future purchase of the NCEFIII's

ownership interest is not certain, the likelihood of the buy-out is one factor suggesting ownership.[10]

Lastly, we analyze the business intent of NHE and the NCEFIII. Here, NHE spearheaded the development of Cane Creek Village and only partnered with the NCEFIII to finance the project. Furthermore, Cane Creek Village directly serves NHE's corporate purpose, as stated in its Articles of Incorporation, "[t]o generally provide for the relief of the poor and distressed . . . through the development, creation, ownership, sponsorship, financing, building and maintenance of low and moderate income housing." To this effect, 100% of the dwelling units in Cane Creek Village qualify for and receive federal low-income tax credits. Additionally, NHE operates similar projects in six other North Carolina counties. In sum, evidence indicates NHE's intent is to own Cane Creek Village.

On the other hand, Mitchell County contends the NCEFIII's 99.9% ownership interest makes the NCEFIII, not NHE, the owner of Cane Creek Village. Nonetheless, evidence suggests the NCEFIII did not primarily seek a typical goal of ownership: profit-sharing. In North Carolina, we recognize that one indicia of "ownership" is profit-sharing between business partners. *See Wilder v. Hobson*, 101 N.C. App. 199, 202, 398 S.E.2d 625, 627 (1990).

Here, the NCEFIII invested in Blue Ridge Housing not to obtain profits from Cane Creek Village's operations, but to utilize tax credits from the Low-Income Housing Tax Credit Program. In fact, the evidence indicates the overall purpose of Cane Creek Village was not to gain profit, but rather to serve the charitable purpose of providing low-income housing. For instance, in 2010, Blue Ridge Housing's statements of cash flow indicated a net loss. Therefore, we determine the business intent of NHE and the NCEFIII suggest NHE has sufficient ownership of Cane Creek Village.

Ultimately, on balance we conclude that although NHE has a small legal percentage interest in Blue Ridge Housing, other substantial

---

10. Neither party has attempted to calculate the monetary value of the interest of the non-member manager during the period of time in which the tax was imposed. Both parties seem to rely on the idea that the value of the property is identical to the percentage of "ownership" established by the instruments. Because the non-member's share can be purchased for the assumption of the remaining mortgage indebtedness on the property after a 15-year period, the limited partner's value is more like a term for years rather than fee simple ownership. The present value of this interest would be necessarily reduced substantially as the 15-year term expires. *See* N.C. Gen. Stat. §§ 8-46, 47 (2011).

factors indicate NHE owns Cane Creek Village for tax purposes. Since the circumstances satisfy the other requirements of N.C. Gen. Stat. § 105-278.6(a)(8), Cane Creek Village is exempt from taxation. Because we determine Cane Creek Village is exempt, we need not further address the portions of Conclusions of Law Nos. 4 and 5 dealing with Hyder's discovery proceedings or equitable estoppel. Therefore, we conclude the trial court did not err in making Finding of Fact No. 16 and Conclusions of Law Nos. 3, 4, and 5.

### C. Uniformity Clause and Equal Protection Clause

[4]  Lastly, Mitchell County argues the Commission's decision violates the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the North Carolina Constitution. Specifically, it describes how similar NHE projects in two other North Carolina counties did not receive *ad valorem* exemptions. Upon review, we disagree with Mitchell County.

On appeal, alleged violations of constitutional rights receive *de novo* review. *See State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009) ("The standard of review for alleged violations of constitutional rights is *de novo*."); *see also Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("[D]e novo review is ordinarily appropriate in cases where constitutional rights are implicated.").

According to the U.S. Constitution, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4. Similarly, under the Uniformity Clause of the North Carolina Constitution, "[n]o class of property shall be taxed except by uniform rule, and every classification shall be made by general law uniformly applicable in every county, city and town." N.C. Const. art. V, § 2(2). In this regard, "[e]very exemption shall be on a State-wide basis and shall be made by general law uniformly applicable in every county, city and town, and other unit of local government." N.C. Const. art. V, § 2(3).

Thus, in North Carolina, "[t]he general rule established by the Constitution is that all property in this State is liable to taxation, and shall be taxed in accordance with a uniform rule. Exemption of specific property . . . because of the purposes for which it is held and used, is exceptional." *Appalachian Student Housing Corp.*, 165 N.C. App. at 384, 698 S.E.2d at 704. For purposes of taxation, "the requirements of 'uniformity,' 'equal protection,' and 'due process' are, for all practical purposes, the same under both the State and Federal Constitutions." *Leonard v. Maxwell*, 216 N.C. 89, 93, 3 S.E.2d 316, 320 (1939); *see also*

*Edward Valves, Inc.*, 117 N.C. App. at 489, 451 S.E.2d at 645 ("The rule of uniformity regarding property taxation is coextensive with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.").

"However, occasional inequities resulting from the application of the statute should not defeat the law unless they result from hostile discrimination." *In re Se. Baptist Theological Seminary, Inc.*, 135 N.C. App. 247, 258, 520 S.E.2d 302, 309 (1999) (quotation marks and citation omitted). Additionally,

> [T]he United States Supreme Court has stated that a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution occurs where a lack of uniformity of taxation results from more than mere errors of judgment by officials and amounts to an intentional violation of the essential principle of practical uniformity.

*Id.* (quotation marks and citation omitted).

In the present case, Mitchell County contends that "an inequitable and non-uniform state of affairs" exists. Specifically, it describes how the Watauga and Ashe County Boards denied *ad valorem* tax exemptions to similar NHE projects, while the County Boards in Wilkes, Yancey, Avery, Alleghany, and Mitchell Counties initially granted exemptions.

First, Mitchell County's argument fails because the evidence indicates all seven counties applied a "uniform rule": N.C. Gen. Stat. § 105-278.6(a)(8). Our Supreme Court has held that "[t]axing is required to be . . . by one and the same unvarying standard." *Hajoca Corp. v. Clayton*, 277 N.C. 560, 569, 178 S.E.2d 481, 487 (1971) (quotation marks and citation omitted); *cf. Anderson v. City of Asheville*, 194 N.C. 117, 118, 138 S.E. 715, 716 (1927) (holding that under the Uniformity Clause, a city could not create a municipal tax structure contradicting state tax laws). This necessitates (i) uniform tax rates and (ii) uniform tax classifications. *See id.* Here, Mitchell County does not contend that any of the seven County Boards implemented a standard conflicting with N.C. Gen. Stat. § 105-278.6(a)(8); instead, it argues they applied the same standard in differing manners.

Still, Mitchell County presents no evidence of "hostile discrimination" in the application of N.C. Gen. Stat. § 105-278.6(a)(8). *See Se. Baptist Theological Seminary, Inc.*, 135 N.C. App. at 258, 520 S.E.2d

at 309. Rather, the varied outcomes appear to result simply from disparate good-faith applications of the "ownership" requirement of N.C. Gen. Stat. § 105-278.6(a)(8).[11] Since "occasional inequities" in a statute's application do not defeat the statute on equal protection or uniformity grounds, we determine no violation of the Uniformity Clause or Equal Protection Clause occurred. *See id.; see also Norfolk S. R.R. Co. v. Lacy,* 187 N.C. 615, 620, 122 S.E. 763, 766 (1924) ("[P]erfect uniformity and perfect equality of taxation, in all the aspects in which the human mind can view it, is a baseless dream.").

Lastly, even if we did determine "an inequitable and non-uniform state of affairs" existed in violation of the Uniformity Clause and Equal Protection Clause, our resolution of this issue would not benefit Mitchell County. Since the instant opinion concludes Cane Creek Village is exempt from *ad valorem* property tax under N.C. Gen. Stat. § 105-278.6(a) (8), any disparities in exemption decisions for other similar NHE projects would likely be resolved in favor of exemption.

Therefore, we conclude Mitchell County's argument is without merit. *See id.*

## IV. Conclusion

We conclude the Commission did not err in reversing the County Board's determination. First, Finding of Fact No. 15 is rationally based on the evidence presented. Second, NHE's ownership interest in Blue Ridge Housing is sufficient to qualify Cane Creek Village for tax exemption under N.C. Gen. Stat. § 105-278.6(a)(8). Lastly, the Commission's decision does not violate the Equal Protection Clause of the U.S. Constitution or the Uniformity Clause of the North Carolina Constitution. Consequently, the Commission's decision is

AFFIRMED.

Judges STROUD and DAVIS concur.

---

11. Since the instant case clarifies the definition of "ownership" for tax exemption purposes, County Boards shall now apply N.C. Gen. Stat. § 105-278.6(a)(8) accordingly when determining exemptions for Cane Creek Village or other similarly-situated properties.